UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RI, Inc. d/b/a SEATING SOLUTIONS,     ) | |
|     ) | |
| Plaintiff,     ) | |
|     ) | CIVIL ACTION |
| v.     ) | NO. 05-CV-10365-JLT |
|     ) | |
| GELLER SPORT, INC., GELLER DEVELLIS,     ) | |
| INC., WORCESTER PROFESSIONAL BASEBALL     ) | |
| LLC, and PERFECT GAME BASEBALL CLUBS, LLC,     ) | |
|     ) | |
| Defendant.     ) | |
|     ) | |

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

This is an action by the plaintiff, RI, Inc., d/b/a Seating Solutions ("Seating Solutions"), against Geller Sport, Inc. and Geller Devellis, Inc. (collectively "Geller") for intentional interference with advantageous relations, misappropriation of trade secrets, conversion, breach of a confidentiality agreement, and violation of Mass. Gen. Law ch. 93A, §§ 2, 11 and against Worcester Professional Baseball, LLC and Perfect Game Baseball Clubs, LLC (collectively, "Worcester Baseball") for breach of contract, breach of the covenant of good faith and fair dealing, and violation of Mass. Gen. Law ch. 93A, §§ 2, 11. Geller intentionally and maliciously disclosed Seating Solutions' confidential design and pricing information to third parties and interfered with an agreement reached by Seating Solutions and Worcester Baseball that involved the construction and renovation of a minor league baseball stadium on the campus of the College of the Holy Cross ("Holy Cross"). Worcester Baseball breached its agreement with Seating Solutions based upon Geller's interference and took no steps whatsoever to prevent Geller from acting in a manner that was obviously contrary to the business interests of Seating Solutions.

## THE PARTIES

1.    Seating Solutions is a corporation organized under the laws of New York, with a principal place of business located at 63 Oser Avenue, Hauppauge, New York 11788.

2.    Geller Sport, Inc. is a corporation organized under the laws of Massachusetts, with a principal office located at 77 North Washington Street, Boston, Massachusetts 02114.

3.    Geller Devellis, Inc. is a corporation organized under the laws of Massachusetts, with a principal office located at 77 North Washington Street, Boston, Massachusetts 02114.

4.    Worcester Professional Baseball, LLC is a limited liability company organized under the laws of Massachusetts with a principal office located at 6 Draper Road, Wayland, Massachusetts 01778.

5.    Perfect Game Baseball Clubs, LLC is a limited liability company organized under the laws of Massachusetts with a principal office located at 6 Draper Road, Wayland, Massachusetts 01778.

## JURISDICTION AND VENUE

6.    This Court has personal jurisdiction over Geller and Worcester Baseball pursuant to Mass. Gen. Law ch. 223A, § 2 because their principal offices are each located in Massachusetts.

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Seating Solutions and Geller are citizens of different states and the amount in controversy exceeds $75,000.00.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Geller's principal office is located in Boston, Massachusetts.

## FACTS

### A.    The Project and the Parties

9.    Seating Solutions is a leader in the seating system design and construction industry and specializes in the sale, rental, and timely installation of custom-designed spectator seating at athletic and recreational facilities.

10.    Geller provides recreation and athletic facility design consulting services.

11.    Worcester Professional Baseball, LLC is the owner and operator of the currently unnamed professional baseball franchise that will begin playing in Worcester as part of the Canadian American Association of Professional Baseball during the Spring of 2005.

12.    In or about December of 2005, Seating Solutions and Worcester Baseball began discussing the possibility that Seating Solutions would perform an extensive renovation of Fitton Field, which is located on the campus of Holy Cross, so that Worcester Baseball could base its team there.

13.    At several points during discussions concerning the renovation project, Worcester Baseball referred to itself as Perfect Game Baseball Clubs, LLC.

14.    Geller's President, Patrick Maguire ("Maguire"), has served as an outside consultant to Worcester Baseball's on this renovation project.

15.    Representatives of Geller Devellis, Inc. attended and participated in all meetings between Seating Solutions and Worcester Baseball concerning the renovations project.

16.    In or about late January 2005, Worcester Baseball entered into discussions with Holy Cross whereby Worcester Baseball would renovate Fitton Field and Holy Cross would allow the professional team to play baseball home games there.

**B.    Negotiations between Seating Solutions and Worcester Baseball in Early February**

17.    Discussions between Seating Solutions, through vice president Scott Suprina ("Suprina") and Worcester Baseball accelerated significantly in or about the beginning of February 2005 and included preliminary drawings and design work.

18.    At a meeting with both Theodore Tye, vice president of Worcester Baseball ("Tye") and Maguire, Suprina shared with Worcester Baseball and Geller the drawings prepared by Seating Solutions and during that meeting they were revised to their final proposed designs for the Fitton Field project.

19.    Suprina made this presentation using AutoCAD, a computer program that enables users to share architectural drawings in an electronic format rather than via traditional blueprints.

20.    Each drawing that Suprina shared with Tye and Maguire was prominently stamped with the notation that the drawing was confidential and proprietary information that belonged to Seating Solutions and was not to be shared with any third party for any purpose under any circumstances.

21.    Following this presentation, Tye told Suprina that when he shared Seating Solutions' initial bid proposal with Maguire, Maguire had "thrown up."

22.    Maguire stated that he believed that Seating Solutions' proposal, which worked out to approximately $500.00 per seat at the stadium, was needlessly high.

23.    Suprina asked Maguire to explain why he was skeptical of Seating Solutions' bid of $500.00 per seat, and Maguire explained that he thought that $300.00 per seat would be a better price.

24.    After listening to Maguire's analysis, Suprina explained several ways in which Maguire's knowledge and understanding of the project, the design of seating systems, and stadium construction generally, was incomplete, uninformed, and otherwise inadequate.

25.    Maguire was visibly upset by this discussion; he did not speak for the remainder of the meeting and thereafter treated Suprina in a dismissive and hostile manner.

**C.    Seating Solutions and Worcester Baseball Reach an Agreement.**

26.    Suprina and his draftsman, Scott Ruczaj ("Ruczaj"), met again with Tye and Maguire on or about February 15, 2005 and revised the drawings. Seating Solutions modified its proposal based on the new drawings, and reduced the pricing to $1,519,880.90. Both the proposal and the drawings were left with Tye and Maguire.

27.    On or about Thursday, February 17, 2005, Worcester Baseball received a revised proposal from Seating Solutions.

28.    Suprina advised Tye that he would be in the Boston area on February 18, 2005 and arranged to meet with Tye so that an order could be placed as Tye was leaving town for a vacation.

29.    On or about Friday, February 18, 2005 Suprina and his associate Ross Jacobs flew to Boston and met with Tye.

30.    At this meeting, Tye and Suprina, with Jacobs looking on, walked through each facet of Seating Solutions' February 17 Proposal and made revisions to the Proposal to satisfy certain of Worcester Baseball's concerns. A true copy of the February 17, 2005 Proposal with Worcester Baseball's handwritten notations is attached hereto as *Exhibit A*.

31.    Suprina also shared Seating Solutions' plans for integrating I-Beam and angle frame construction on the project in a manner that would maximize quality while keeping costs lower than if the project had employed only I-Beam construction.

32.    Suprina then stated "Excuse me for being so blunt, but I must start work on Saturday to make your date. Do I have an order?"

33.    Tye responded "Yes. You have an order." At the close of this meeting, Tye shook hands with Suprina and confirmed that Worcester Baseball and Seating Solutions had an agreement concerning the renovations of Fitton Field.

34.    Tye, with Suprina and Jacobs present, then told Worcester Baseball's president and chief executive officer Alan Stone that Worcester Baseball and Seating Solutions had reached an agreement.

35.    On or about the morning of Monday, February 21, 2005, Seating Solutions sent Worcester Baseball a final version of the agreement that had been reached based upon the revisions to which Tye and Suprina had agreed on the previous Friday. A true copy of the final version of the agreement is attached hereto as *Exhibit B*.

36.    The total contract price was $1,519,880.90.

37.    Seating Solutions expected and anticipated that its profit under the contract would be approximately $650,000.00.

**D.    Worcester Baseball Terminates the Agreement due to Geller's Malicious Conduct.**

38.    On or about February 22, 2005, Worcester Baseball terminated its agreement with Seating Solutions.

39.    On or about February 23, 2005, Suprina learned that Worcester Baseball had entered into a separate agreement with Dant Clayton Corporation ("Dant Clayton"), a seating systems company based in Louisville, Kentucky.

40.    Upon information and belief, Maguire had worked extensively with the Dant Clayton in the past and he advised Worcester Baseball to terminate its agreement with Seating Solutions and enter into an agreement with Dant Clayton.

41.    After the agreement fell through, Suprina was reviewing electronic mail messages that he had received the previous week and noticed that he had received one concerning the Fitton Field project from a representative of a stadium lighting company located in Massachusetts.

42.    In the message, a true copy of which is attached hereto as *Exhibit C*, the lighting company representative described the Fitton Field project and stated that Geller, specifically Maguire, was the project's "designer." He urged Suprina to review a set of AutoCAD drawings that were attached to the message and to consider getting involved with the project.

43.    Suprina opened the message, and discovered that the attached AutoCAD drawings were the exact drawings that he had shared with Worcester Baseball and Geller, though Geller had intentionally removed the confidentiality stamp on the documents, which had stated that the drawings were proprietary information belonging to Seating Solutions.

44.    Upon information and belief, Geller (Maguire) impermissibly and maliciously used the AutoCAD drawings that Seating Solutions had provided during the contract negotiations and shared those with other potential contractors on the Fitton Field project and requested other pricing.

45.    Worcester Baseball took no reasonable steps to prevent Geller from acting in a manner contrary to the legitimate business interests of Seating Solutions, even though Worcester Baseball could have done so.

46.     Renderings of the Fitton Field project released to the public in early March 2005 reveal that Worcester Baseball settled upon a design approach that is strikingly similar to the approach outlined by Seating Solutions during contract negotiations.

47.     Upon information and belief, Geller (Maguire) knowingly caused or induced Worcester Baseball to end its agreement with Seating Solutions.

48.     Upon information and belief, in causing or inducing Worcester Baseball to end its agreement with Seating Solutions, Geller (Maguire) acted with actual malice, out of an improper motive, or employed improper means.

49.     Geller generally failed to adhere to the requirement that it conduct its business affairs fairly, in good faith, and in a fundamentally honest manner.

### COUNT I (Breach of Contract)
### (Worcester Baseball)

50.     Seating Solutions incorporates by reference the allegations of all of the preceding paragraphs of the Complaint as if set forth fully herein.

51.     Worcester Baseball and Seating Solutions entered into an agreement pursuant to which Seating Solutions promised to perform certain renovation work at Fitton Field and Worcester Baseball promised to pay Seating Solutions for performing that work.

52.     Seating Solutions is not in default in any respect under the agreement.

53.     Worcester Baseball is in material breach of the agreement in that it terminated the agreement with Seating Solutions with no justification whatsoever.

54.     As a direct and proximate result of Worcester Baseball's breach of its contractual obligations under the agreement, Seating Solutions has suffered and will suffer damages of at least $650,000.00.

### COUNT II (Breach of the Covenant of Good Faith and Fair Dealing)
### (Worcester Baseball)

55.     Seating Solutions incorporates by reference the allegations of all of the preceding paragraphs of the Complaint as if set forth fully herein.

56.    By its conduct, Worcester Baseball has breached the covenant of good faith and fair dealing implied in its agreement with Seating Solutions.

57.    As a result of these breaches, Seating Solutions has suffered substantial damages in an amount that is to be determined at trial.

### COUNT III (Tortious Interference with Advantageous Relationship)
### (Geller)

58.    Seating Solutions incorporates by reference the allegations of all of the preceding paragraphs of the Complaint as if set forth fully herein.

59.    Seating Solutions was in an advantageous relationship with Worcester Baseball.

60.    Geller knowingly caused or induced Worcester Baseball to end its advantageous relationship with Seating Solutions.

61.    In causing or inducing Worcester Baseball to end its advantageous relationship with Seating Solutions, Geller acted with actual malice, out of an improper motive, or employed improper means.

62.    Geller's conduct directly and proximately caused Seating Solutions actual pecuniary harm in an amount to be determined at trial that is no less than $650,000.00.

### COUNT IV (Conversion)
### (Geller)

63.    Seating Solutions incorporates by reference the allegations of all of the preceding paragraphs of the Complaint as if set forth fully herein.

64.    The AutoCAD designs and plans related to the Fitton Field project presented by Seating Solutions to Worcester Baseball and Geller are and were at all times material hereto the property of Seating Solutions.

65.    Geller has wrongfully exercised dominion and control over the AutoCAD designs provided by Seating Solutions although it has never had a right to do so.

66.    Geller's conduct directly and proximately caused Seating Solutions actual pecuniary harm in an amount to be determined at trial that is not less than $650,000.00.

### COUNT V (Misappropriation of Trade Secrets; Mass. Gen. Laws ch. 93, § 42)
### (Geller)

67.    Seating Solutions incorporates by reference the allegations of all of the preceding paragraphs of the Complaint as if set forth fully herein.

68.    Geller misappropriated trade secrets and other confidential and proprietary information of Seating Solutions of which it learned during the negotiations between Seating Solutions and Worcester Baseball.

69.    As a result of Geller's misappropriation of trade secrets, Seating Solutions has suffered damages in an amount to be determined at trial that is not less than $650,000.00.

### COUNT VI (Breach of Confidentiality Agreement)
### (Geller)

70.    Seating Solutions incorporates by reference the allegations of all of the preceding paragraphs of the Complaint as if set forth fully herein.

71.    In exchange for adequate and valuable consideration, Geller agreed to abide by the terms and conditions that Seating Solutions placed on the AutoCAD drawings that Seating Solutions shared with Geller and Worcester Baseball.

72.    Seating Solutions has complied with all material terms of the confidentiality agreement.

73.    By improper appropriation, use and disclosure to third parties of the AutoCAD drawings, pricing, and scope information prepared by Seating Solutions, Geller is in breach of its agreement with Seating Solutions.

74.    As a result of Geller's breaches of the confidentiality agreement, Seating Solutions has suffered damages in an amount to be determined at trial that is not less than $650,000.00.

### COUNT VII (Violation of Mass. Gen. Laws ch. 93A, §§ 2, 11)
### (Worcester Baseball & Geller)

75.    Seating Solutions incorporates by reference the allegations of all of the preceding paragraphs of the Complaint as if set forth fully herein.

76.    Worcester Baseball, Geller, and Seating Solutions engage in the conduct of trade or commerce.

77.    Worcester Baseball and Geller's actions, the transactions as described above, and the resulting damages to Seating Solutions occurred primarily and substantially in Massachusetts.

78.    The statements, acts, and conduct of Geller and Worcester Baseball set forth above constitute unfair and deceptive acts or practices in conduct of trade or commerce in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11.

79.    Said statements, acts, and conduct have caused injury to Seating Solutions in that Worcester Baseball and Geller's conduct has deprived Seating Solutions of $650,000.00 in profits that Seating Solutions anticipated that it would realize under its agreement with Worcester Baseball.

80.    Said conduct of Worcester Baseball and Geller was a willful and knowing violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11, and a deliberate breach of its known obligations to Seating Solutions.

81.    As a direct and proximate result of Worcester Baseball and Geller's knowing and willful unfair or deceptive acts or practices, Seating Solutions has suffered substantial damages in an amount to be determined at trial that is not less than $650,000.00.

WHEREFORE, Seating Solutions hereby requests that the Court:

(a)    Enter judgment in favor of Seating Solutions on each of its claims;

(b)    Award Seating Solutions compensatory damages in an amount that is at least $650,000.00;

(c)    Treble said damages pursuant to Mass. Gen. Laws ch. 93A, §§ 2, 11 and award Seating Solutions its reasonable attorneys fees and costs;

(d)    Impose a constructive trust upon all amounts obtained by Geller as a result of its wrongful conduct as set forth herein; and

(e)    Enter such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Seating Solutions hereby demands a jury trial on all counts so triable.

Respectfully Submitted,

RI, INC. d/b/a SEATING SOLUTIONS

THE LAW OFFICE OF TERRY KLEIN
Terry Klein, BBO# 652052
1558 Dorchester Avenue, Ste. 202
Dorchester, Massachusetts  02122
Telephone: (617) 825-8175
Facsimile: (617) 507-6454

Dated: March 11, 2005

 **SOLUTIONS**

63 Oser Avenue
Hauppauge, NY 11788
Phone: 631-845-0449
Fax: 631-845-0470

www.sitonthis.com



## PROPOSAL

February 17, 2005

Mr. Ted Tye
Perfect Game       *Worcester Professional Baseball, LLC*
c/o 6 Draper Road       *PO Box 2221*
Wayland, MA 01778       *Worcester, MA  01613 - 2221*

Re: Perfect Game/Fitton Field

Dear Ted,

Here is our final proposal based on the Fitton Field drawings dated 2/15/05.

Approximately 3187 seats delivered and assembled, includes 1706 Outdoor Aluminum
flip-up chairs numbered with arms.
512 each Bleachair seats at same price as aluminum backrest
969 each bench seat only.
Includes rear crosswalk and all stairways
Two ADA field level platforms with vomitory access
Two complete dug-outs/prefabricated with electric package
Two front field walls – plastic lumber and aluminum
Two field wall entry gates
One each press box with photo platform
Drink rails around party deck with modesty panel
Elevated bleacher seating system

Note, complete system is Tredweld all aluminum deck with mounting channels and
contrasting aisle nosing. Complete front 10 rows aluminum square tube frame combo.
Decking and hillside is galvanized I-Beam.

Please note that I have included Outdoor Aluminum flip-up chair, an excellent,
comfortable and durable product that I strongly recommend.

Price delivered and assembled:       $1,519,880.90

Pricing excludes concrete, electric and water connections. Earthwork by others. Pricing does not include any applicable sales tax and is based on Seating Solutions standard levels of insurance. *Specify levels. Insurance certificate to be provided.*

Note, if you would like to consider an Irwin Patriot chair I can offer it to you. I do not recommend it. Consider it is spring activated and requires maintenance and it is not engineered for this deck although I will supply an adaptor bracket. The most important part is that I would not guarantee Irwin's delivery time.
Add $44.00 per chair installed.

I want this project to be a showcase for Seating Solutions so I will offer you the following. With your order, if you would like us to do the upper deck bathrooms we will do it at our cost $50,000.00. This way we control the support and placement. *Bathroom must be ADA compliant and meet MA plumbing code.*

We will provide stamped engineered drawings for your approval. We can design concrete footings if you give us soil information. *Design of concrete footings is included and must be provided by ~~our needs~~. All plans (studies and footings) must be signed by a MA architect and MA structural engineer. All plans must conform with ADA requirements ok*

Terms: 10% deposit; 25% on drawing approval; 25% on 1st delivery, 25% on last delivery and 15% on completion.

*client should provide soil info.*

Note, to fast-track this project your contract and payments, with the exception of the deposit check, will be made to Outdoor Aluminum, Inc. c/o Seating Solutions. Please make deposit check out to Seating Solutions.

When the design is confirmed I will include a schedule of seat style values to allow for addition or subtraction of seats in final design and debit or credit of such.

Please keep in mind that we can easily add extra bleachers down the first and third base lines in the future. We could offer them as a rental even in the first or second season.

### Terms and Conditions

All prices quoted are subject to the following terms and conditions.
All measurements are approximate.
Price does not include any permits or bonds required.
Due to variations in local codes and safety criteria, it is the responsibility of customer to notify us in writing of any specific codes or safety requirements you may have. *must meet ADA requirements.*
Once delivery/installation times have been established any changes to the schedule due to inaccessibility to our equipment or elevator access will result in a charge of $50.00 per man, per hour.
Any changes to delivery, installation or removal of date or time should be in written notice to our office 24 hours prior.
Price based on installation area being free of obstacles and clear for the crews to do the work outlined.
Should the buyer choose, for any reason, to delay installation or assembly when the product is fabricated and ready for delivery all money due on delivery will be immediately paid.
Should the buyer choose to delay installation or assembly of any part of the product, causing a split installation or assembly all money due on completion will be paid in full on completion of the first phase of the installation/assembly.
It is the policy of Seating Solutions to make no more than one visit to the site prior to delivery. Once on the site for installation of the product our crew foreperson will attend job site meetings on an "as needed" basis only.

Any and all liability on RI Inc./Seating Solutions *→ and by Worcester Professional Baseball LLC* under this agreement is limited to fees
paid. *plus penalties outlined herein.*    *may*
Any controversy or claim arising out of this contract ~~shall~~ be settled by arbitration in
accordance with the Construction Industry Arbitration Rules of the American Arbitration
Association. The arbitration hearing is to be held in ~~the County of Suffolk or Nassau.~~ *Massachusetts.*
~~If RI, Inc./Seating Solutions retain an attorney to collect money due under this contract, it~~ *Either*
~~is entitled to its reasonable attorneys fees as well.~~ *party may*
*also pursue*
*a claim in*
Material Status: Materials Delivered and Assembled    *a Massachu-*
Pricing is based on acceptance of offer no later than 5 days from date of proposal unless    *setts*
otherwise specified in the proposal. Additional charge may apply for orders signed later    *Court.*
than 5 days from date of proposal issuance.
Please place your initials next to each line item on this proposal, sign the terms page
where appropriate and return the entire proposal to Seating Solutions.
Please fill in date of first use or substantial completion: _____

**Terms: 10% deposit; 25% on drawing approval; 25% on 1st delivery, 25% on last
delivery and 15% on completion.**
**Note, to fast-track this project our contract and payments, with the exception of the
deposit check will be made to Outdoor Aluminum, Inc. c/o Seating Solutions. Please
make deposit check out to Seating Solutions.**
**Total Contract Amount: $1,519,880.90**

I look forward to working with you. Thanks for the opportunity.

Sincerely,


Scott Suprina -- Vice President

_____    _____
Authorized Signature of Acceptance                              Date


_____
Print Name and Title

*1. Penalties. There shall be a penalty of $50,000*
*per week for late delivery. Penalties shall begin*
*to accrue if the material is not ~~set~~ installed and*
*substantially complete and in compliance with*
*plans and specifications by May 15, 2005.*
*2. Schedule — [please provide to follow] ~~by Provided~~ Based on ~~date~~ infor + elevation*
*                                                                                    10 days concrete*
*3. Subject to ~~our~~ AIA contract.    +14 days erect*
*                                              +45 steel fab + del*
*4. ~~At~~ Based on Rct of signed contract*
*   + deposit By feb 22 ~~nd~~ ~~ongoing~~*
*                              only*



63 Oser Avenue
Hauppauge, NY 11788
Phone: 631-845-0449
Fax: 631-845-0470

www.sitonthis.com



## PROPOSAL

February 21, 2005

Mr. Ted Tye
Worcester Professional Baseball, LLC
PO Box 2221
Worcester, MA 01613-2221

Re: Fitton Field

Dear Ted,

Here is our final proposal based on the Fitton Field drawings dated 2/15/05.

Approximately 3187 seats delivered and assembled, includes 1706 Outdoor Aluminum
flip-up chairs numbered with arms.
512 each Bleachair seats at same price as aluminum backrest
969 each bench seat only.
Includes rear crosswalk and all stairways
Two ADA field level platforms with vomitory access
Two complete dug-outs/prefabricated with electric package
Two front field walls – plastic lumber and aluminum
Two field wall entry gates
One each press box with photo platform
Drink rails around party deck with modesty panel
Elevated bleacher seating system

Note, complete system is Tredweld all aluminum deck with mounting channels and
contrasting aisle nosing. Complete front 10 rows aluminum square tube frame combo.
Decking and hillside is galvanized I-Beam.

Please note that I have included Outdoor Aluminum flip-up chair, an excellent,
comfortable and durable product that I strongly recommend.

Price delivered and assembled:          $1,519,880.90

Pricing excludes concrete, electric and water connections. Earthwork by others. Pricing does not include any applicable sales tax and is based on Seating Solutions standard levels of insurance. An insurance certificate will be provided. General Liability $1,000,000.00 per occurrence and $2,000,000.00 general aggregate; $1,000,000.00 Automobile Liability.

Note, if you would like to consider an Irwin Patriot chair I can offer it to you. I do not recommend it. Consider it is spring activated and requires maintenance and it is not engineered for this deck although I will supply an adaptor bracket. The most important part is that I would not guarantee Irwin's delivery time.
Add $44.00 per chair installed.

I want this project to be a showcase for Seating Solutions so I will offer you the following. With your order, if you would like us to do the upper deck bathrooms we will do it at our cost $50,000.00. This way we control the support and placement. Bathroom must be included and must be provided by March 15, 2006

We will provide stamped engineered drawings for your approval. We will design concrete footings and Worcester Professional Baseball, LLC is to provide soil information. All plans (stands and footings) must be signed by MA architect and MA Structural Engineer. All plans must conform with ADA requirements.

The pricing and terms are based on receipt of a signed proposal and deposit by February 22, 2005 only.
Terms: 10% deposit; 25% on drawing approval; 25% on 1st delivery, 25% on last delivery and 15% on completion.
Note, to fast-track this project your contract and payments, with the exception of the deposit check, will be made to Outdoor Aluminum, Inc. c/o Seating Solutions. Please make deposit check out to Seating Solutions.

When the design is confirmed I will include a schedule of seat style values to allow for addition or subtraction of seats in final design and debit or credit of such.

Please keep in mind that we can easily add extra bleachers down the first and third base lines in the future. We could offer them as a rental even in the first or second season.

### Terms and Conditions

All prices quoted are subject to the following terms and conditions.
All measurements are approximate.
Price does not include any permits or bonds required.
Due to variations in local codes and safety criteria, it is the responsibility of customer to notify us in writing of any specific codes or safety requirements you may have. Plans must comply with ADA requirements.
Once delivery/installation times have been established any changes to the schedule due to inaccessibility to our equipment or elevator access will result in a charge of $50.00 per man, per hour.
Any changes to delivery, installation or removal of date or time should be in written notice to our office 24 hours prior.
Price based on installation area being free of obstacles and clear for the crews to do the work outlined.
Should the buyer choose, for any reason, to delay installation or assembly when the

product is fabricated and ready for delivery all money due on delivery will be immediately paid.

Should the buyer choose to delay installation or assembly of any part of the product, causing a split installation or assembly all money due on completion will be paid in full on completion of the first phase of the installation/assembly.

It is the policy of Seating Solutions to make no more than one visit to the site prior to delivery. Once on the site for installation of the product our crew foreperson will attend job site meetings on an "as needed" basis only.

Any and all liability on RI Inc./Seating Solutions and by Worcester Professional Baseball LLC under this agreement is limited to fees paid plus penalties outlined herein.

Any controversy or claim arising out of this contract may be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The arbitration hearing is to be held in Massachusetts. Either party may also pursue a claim in a Massachusetts Court.

Penalties:

-There shall be a penalty of $50,000.00 per week for late delivery. Penalties shall begin to accrue if the material is not installed and substantially complete and in compliance with plans and specifications by May 15, 2005.

-Seating Solutions will provide a delivery and installation schedule by 2/24/05.

-This agreement is subject to an AIA Contract.

Material Status:  Materials Delivered and Assembled

Please place your initials next to each page on this proposal, sign the terms page where appropriate and return the entire proposal to Seating Solutions.

Please fill in date of first use or substantial completion: May 15, 2005.

**The pricing and terms are based on receipt of a signed proposal and deposit by February 22, 2005 only.**

**Terms: 10% deposit; 25% on drawing approval; 25% on 1st delivery, 25% on last delivery and 15% on completion.**

**Note, to fast-track this project our contract and payments, with the exception of the deposit check will be made to Outdoor Aluminum, Inc. c/o Seating Solutions. Please make deposit check out to Seating Solutions.**

**Total Contract Amount: $1,519,880.90**

I look forward to working with you. Thanks for the opportunity.

Sincerely,


Scott Suprina – Vice President

_____      _____

Authorized Signature of Acceptance                                    Date


_____

Print Name and Title

## R. Marc Ligator

**From:** Scott Suprina

**Sent:** Tuesday, February 22, 2005 7:46 AM

**To:** R. Marc Ligator

**Subject:** FW: Worcester, MA stadium bleachers


-----Original Message-----
**From:** ARMESIE@aol.com [mailto:ARMESIE@aol.com]
**Sent:** Tuesday, February 15, 2005 7:29 AM
**To:** Scott Suprina
**Subject:** Worcester, MA stadium bleachers

Scott,

My name is Travis Armes and I cover Massachusetts for Marturano Recreation Company. Attached are some drawings I received from Musco Sports Lighting about a project in Worcester, MA. Worcester just got an independent minor league team and is building a new stadium. The designer of the new stadium is Patrick Maguire of Geller Sports out of Boston. They have always used a different bleacher company, but apparently had a falling out with them and the local Musco rep, Chris Sankey, has mentioned us as a possible replacement. According to Chris, Geller has 4-5 stadium/bleacher projects that will happen this year, so this would be a good opportunity for us to get our foot in the door.

This project has a huge time crunch issue. Opening day is May 26th and Patrick is concerned about delivery and is looking for a commitment. Whether we can do it or not, I need to let him know immediately one way or the other.

I was not able to open the attached drawings because I have an incompatible version of AUTOCAD, so I don't know if these are helpful or not. Please take a look at them and let me know if you need other information.

I will give you a call. Hopefully, we can work on this project and get in good with Geller.

Thank you,

Travis Armes
978-282-4350--Home/Office
732-620-1759--Cell