UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RI, Inc., d/b/a SEATING SOLUTIONS, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. |
| GELLER SPORT, INC., GELLER DEVELLIS, | ) | 05-CV-10365-JLT |
| INC., WORCESTER PROFESSIONAL BASEBALL | ) | |
| LLC, and PERFECT GAME BASEBALL CLUBS, | ) | |
| LLC, | ) | |
| Defendants | ) | |

## MEMORANDUM OF LAW OF DEFENDANTS, WORCESTER PROFESSIONAL BASEBALL, LLC, AND PERFECT GAME BASEBALL CLUBS, LLC, IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### INTRODUCTION

The law has long recognized that there is a fundamental difference between negotiations and binding contracts. Parties are free to exchange proposals, negotiate the terms, accepting some and rejecting others, without fear of being bound. That is why parties will often state in writing that in order for there to be a binding agreement, the written exchange must be signed and sometimes, a deposit must be paid. By insisting on such terms, the parties attempt to protect themselves from later disputes. Here, the plaintiff expressly included such requirements yet seeks to enforce an alleged contract even when its own terms were not met. As a matter of law, it cannot do so.

Defendants Worcester Professional Baseball, LLC ("Worcester Baseball") and Perfect Game Baseball Clubs, LLC ("Perfect Game") are Massachusetts limited liability companies. Worcester Baseball is the owner of the new Worcester minor league baseball franchise (the "Tornadoes"). Perfect Game is a member and the manager of Worcester

Baseball. Worcester Baseball is presently engaged in efforts to expand and renovate the

baseball stadium known as Fitton Field (the "Project") located on the grounds of the

College of the Holy Cross ("Holy Cross") where the Tornadoes will play their home

games. One of the contractors with whom Perfect Game had discussions and from whom

Perfect Game received proposals for some of the expansion and renovation work is

plaintiff RI, Inc. d/b/a Seating Solutions ("Seating Solutions"). Worcester Baseball

rejected each of Seating Solutions' proposals. In the aftermath of Seating Solutions'

failure to secure a contract for the Project, Seating Solutions initiated this action against

Worcester Baseball, Perfect Game, Geller Sport, Inc., and Geller Devellis, Inc.

In this action, Seating Solutions has asserted claims for breach of contract, breach

of the covenant of good faith and fair dealing, and violations of G.L. c.93A against

Worcester Baseball and Perfect Game[1] based on a purported oral contract allegedly

reached prior to submitting its last proposal. This action must be dismissed because

while Worcester Baseball and Seating Solutions were, in fact, involved in discussions

concerning a potential contract and at least three different proposals were submitted by

Seating Solutions, all were rejected.

## MATERIAL FACTS[2]

Worcester Baseball is the owner and operator of the Tornadoes, an AA-level

minor league baseball franchise that will begin playing in Worcester as part of the

Canadian American Association of Professional Baseball during the Spring of 2005.

---

[1] In its Amended Complaint, without any basis in law or fact, Seating Solutions treats Worcester Baseball and Perfect Game as a single entity. (See Amended Complaint, Introduction.)

[2] For purposes of this motion only, Worcester Baseball and Perfect Game, as they must, treat all allegations contained in plaintiff's complaint as true. This recitation is merely a summary of the *plaintiff's material allegations* and is not and should not be construed as an admission of any fact by the defendants. The defendants expressly reserve the right to contest all factual allegations in plaintiff's complaint in the event that their motion to dismiss is denied.

(<u>See</u> Amended Complaint ¶11.)  Worcester Baseball is engaged in efforts to renovate and expand Fitton Field and has had discussions with a number of contractors in connection with the Project.  One such contractor was Seating Solutions.  (<u>Id.</u> at ¶12.)

Seating Solutions is a contractor that designs, sells, and installs seats and seating systems.  (<u>See</u> <u>Id.</u> at ¶9.)  Beginning in or around December 2004, Seating Solutions began having discussions with Worcester Baseball regarding a potential contract to design, sell, and install seats at Fitton Field as part of the Project.  (<u>See</u> <u>Id.</u> at ¶12.)

In early February 2005, Seating Solutions met with Worcester Baseball and its design professional.  Seating Solutions submitted a proposal and some preliminary drawings and design work in connection with those ongoing discussions.  (<u>Id.</u> at 17-18, 21.)  This initial proposal was rejected by Worcester Baseball.  (<u>Id.</u> at 21.)  Undeterred, Seating Solutions sought to explain and justify its proposal to the design professional overseeing the Project.  (<u>Id.</u> at ¶¶17-18, 21-25.)

Thereafter, on or about February 15, 2005, Seating Solutions met with Worcester Baseball and its design professional and discussed both its design and its proposal.  At that meeting, various revisions to Seating Solutions' design and proposal were made and another proposal was submitted to Worcester Baseball.  (<u>Id.</u>, ¶¶26-27.)  That second proposal was similarly rejected.  (<u>Id.</u> at ¶30.)

In its ongoing effort to secure a contract for the Project, on or about February 18, 2005, Seating Solutions once again met with Worcester Baseball and its design professional.  (<u>Id.</u> at ¶¶28-30.)  After that meeting, another revised proposal was submitted to Worcester Baseball on or about February 21, 2005.  (<u>See</u> Complaint ¶¶29-30, 35.)  That third proposal was also rejected.  (<u>Id.</u> at ¶38.)  Eventually, Worcester

Baseball accepted a proposal from another contractor, Dant Clayton Corporation ("Dant Clayton"). (Id. ¶39.)

## ARGUMENT

I.    Seating Solutions Fails To State A Viable Claim For Breach Of Contract Under Massachusetts Law.

     A.    Elements Of A Breach Of Contract Claim.

In order to state a claim for breach of contract under Massachusetts law, the plaintiff must demonstrate: (1) that the parties reached a valid and binding agreement; (2) that one party breached[3] the terms of the agreement; and (3) that the non-breaching party suffered damages as a result of the breach. See Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir. 1999); Guckenberger v. Boston Univ., 957 F.Supp. 306, 316 (D.Mass. 1997); Yellin & Hyman, P.C. v. James N. Ellis & Associates, P.C., 2001 WL 755851*3 (Mass. Super. 2001).

     1.    Seating Solutions' Proposals Were Merely That, And They Were Rejected.

Under Massachusetts law, the expression of a willingness to receive and consider proposals is not an offer. See Cronin v. National Shawmut Bank, 306 Mass. 202, 210 (1940). "There is no obligation to accept the most favorable proposal received or to accept any proposal at all." Id. Indeed, any and all proposals may be rejected for any reason or for no reason at all and the mere ongoing exchange of draft documents does not give rise to a contract. Id. See also Tull v. Mister Donut Dev. Corp., 7 Mass. App. Ct.

---

[3] Under Massachusetts law, a breach is a failure to perform for which there is no legal excuse. See Sterilite Corp. v. Continental Cas. Co., 20 Mass. App. Ct. 215, 220 (1985), rev'd on other grounds, 397 Mass. 837 (1986); Yellin & Hyman, P.C. v. James N. Ellis & Associates, P.C., 2001 WL 755851*4 (Mass. Super. 2001).

626, 632 (1979). Parties often require receipt of signed documents before being bound to

any proposal. "Business men would be undesirably inhibited in their dealings if

expressions of intent and the exchange of drafts were taken as legally binding

agreements." <u>Tull</u>, 7 Mass. App. Ct. at 632. Language looking to the execution of a final

written agreement, as present here,[4] justifies a strong inference that the parties do not

intend to be bound. See <u>Rosenfield v. United States Trust Co.</u>, 290 Mass. 210, 216

(1935); <u>Wasserman v. Roach</u>, 336 Mass. 564, 568 (1958); <u>Goren v. Royal Invs. Inc.</u>, 25

Mass. App Ct. 137, 140 (1987).

     The three different proposals alleged in the Amended Complaint were merely

that, proposals, and each was expressly entitled as such. Each document intentionally

refers to itself as a "proposal" no fewer than five times.[5] Indeed, for its own protection,

all of the proposals submitted by Seating Solutions, by their express terms, were required

to be signed[6] and returned with a 10% deposit[7] in order to be accepted. For example, the

third proposal was conditioned on "receipt of a signed proposal and deposit by February

22, 2005 only." There is no allegation that any of these draft proposals were ever signed

and returned with the required deposit. As such, none of those proposals were accepted

by Worcester Baseball and, indeed, Worcester Baseball affirmatively advised Seating

Solutions that it was rejecting its third proposal. See <u>Laprade v. Fitchburg & L. St. Ry.</u>

<u>Co.</u>, 205 Mass. 77, 79 (1910)(a written agreement is ineffective if it remains unaccepted

---

[4] In this regard, each proposal was required to be initialed on every page by the customer, signed and returned with a deposit. Thereafter, plans were required to be approved and an AIA contract was to be agreed to and executed. None of these things took place.

[5] For example, the first sentence of both the second and third proposals begins, "Here is our final proposal...."

[6] In this regard, the proposals include a line for "Authorized Signature of Acceptance," and require the potential customer to "place your initial next to each page of this proposal, sign the terms page where appropriate and return the entire proposal to Seating Solutions."

[7] Based on the allegations of the Amended Complaint, the deposit required by the third proposal submitted by Seating Solutions totaled $151,988.00. (See Amended Complaint, Ex. B.)

by one of the parties).  In such circumstances, there simply is no contract and the claim

must be dismissed as a matter of law.  See Montgomery Ward & Co. v. Johnson, 209

Mass. 89, 91 (1911)(no contract is formed unless an offer is accepted and the claim must

be dismissed as a matter of law).

> 2.    The Alleged Exchange At The Final Meeting Between Seating
>        Solutions And Worcester Baseball Does Not Give Rise To A
>        Contract.

To the extent that Seating Solutions premises its contract claim on the alleged oral

exchange at its last meeting with Worcester Baseball and its design professional, it

similarly fails.  It is a settled principle of contract law that "[a] promise made with an

understood intention that it is not to be legally binding, but only expressive of a present

intention, is not a contract."  Kuzmeskus v. Pickup Motor Co., 330 Mass. 490, 493 (1953).

Phoenix Spring Beverage Co. v. Harvard Brewing Co., 312 Mass. 501, 506 (1942).

Wellington v. Anthorp, 145 Mass. 69, 74 (1887).  If the oral exchange alleged here

actually took place it was, at most, such an expression.  No documents were signed.  No

deposit paid.  Worcester Baseball did not thereafter refuse to accept competing proposals.

Indeed, Seating Solutions' own action in resubmitting yet another "proposal" after the

meeting rather than the final AIA Contract anticipated in each of prior proposals

demonstrates that it understood that no binding agreement had been reached at the

meeting.

II.   In The Absence Of An Enforceable Contract With Worcester Baseball and
      Perfect Game, Seating Solutions' Claims For Breach Of The Implied
      Covenant Of Good Faith And Fair Dealing Must Be Dismissed As A
      Matter Of Law.

Under Massachusetts law, a covenant of good faith and fair dealing is implied in

every contract. See, e.g., Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-

73 (1991). The implied covenant of good faith and fair dealing requires that each party

avoid doing "anything that will have the effect of destroying or injuring the right of the

other party to receive the fruits of the contract." Id. at 471-72 (internal quotation and

citation omitted). However, to prevail on such a claim, there must first be a binding

contract. See Levenson v. LMI Realty Corp., 31 Mass. App. Ct. 127, 131 (1991). As

such, the implied covenant of good faith and fair dealing does not attach to mere

negotiations. See Levenson, 31 Mass. App. Ct. at 131. Moreover, in the absence of an

express agreement between parties to negotiate in good faith, the courts will not imply

one. See Schwanbeck v. Federal-Mogul Corp., 31 Mass. App. Ct. 390, 396 (1991), rev'd

on other grounds, 412 Mass. 703 (1992). Thus, in light of Seating Solutions' failure to

state a viable breach of contract claim, its implied covenant claim similarly fails and this

claim must be dismissed.

III.  Because Seating Solutions' Claims For Purported Violations of G.L. c.
      93A Are Wholly Premised On And Derivative Of Its Claims For Breach
      Of Contract And Breach Of The Implied Covenant Of Good Faith And
      Fair Dealing, The Failure Of Those Claims Is Dispositive Of Its Claim
      Under G.L. c.93A.

The outer boundaries for what acts or practices may constitute a Chapter 93A

violation is a question of law for the Court. See Commercial Union Inc. Co. v. Seven

Provinces Ins. Co., 217 F.3d 33, 40 (1st Cir. 2000); Schwanbeck v. Federal-Mogul Corp.,

31 Mass. App. Ct. 390, 414 (1991), rev'd on other grounds, 412 Mass. 703 (1992). In

order to state a viable claim for relief under Chapter 93A, the acts or practices complained of ordinarily must: (1) fall within the penumbra of some common law, statutory or other established concept of unfairness; (2) be immoral, unethical, oppressive or unscrupulous; and (3) cause substantial injury to consumers, competitors, or other businessmen. See, e.g., Commercial Union Ins. Co., 217 F.3d at 40. See also PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975); Atkinson v. Rosenthal, 33 Mass. App. Ct. 219, 226 (1992). However, "not every unlawful act is automatically an unfair (or deceptive) one under G.L. c. 93A." Mechanics Nat'l Bank of Worcester v. Killeen, 377 Mass. 100, 109 (1979). In order to state a viable claim under Section 11, "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Levenson v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1978).

A mere breach of contract, without more, does not constitute a violation of G.L.c. 93A. See Pepsi-Cola Bottling Co. v. Checkers, Inc., 754 F.2d 10 (1st Cir. 1985). "[A] good faith dispute as to whether money is owed, or performance of some kind is due, is not the stuff of which a c.93A claim is made." Duclersaint v. Federal Nat'l Mort. Assn., 427 Mass. 809, 814 (1998). Here, Seating Solutions' c.93A claims against Worcester Baseball and Perfect Game are premised on their purported breach of contract and breach of the implied covenant of good faith and fair dealing. Because those claims fail as a matter of law, Seating Solutions' c.93A claim, which is wholly premised on and derivative of those claims, similarly fails. Moreover, even if there had been a contract with Worcester Baseball and that contract was breached, which is all that is alleged in the Amended Complaint, that in and of itself is inadequate to state a claim under G.L. c.93A,

§§2 and 11 as a matter of law.  See, e.g., Pepsi-Cola Bottling Co., supra.  As such, G.L. c.93A claims must be dismissed as to Worcester Baseball and Perfect Game.

CONCLUSION

It is clear from the face of the Complaint that although Seating Solutions and Worcester Baseball were engaged in discussions of a potential contract in connection with the Project, it went no further.  By its own admission, Seating Solutions was still revising its proposal as of its last meeting with Worcester Baseball and its proposal, in the end, was expressly rejected.  In such circumstances, Seating Solutions cannot state a viable breach of contract claim as a matter of law and, as such, that claim, as well as its wholly derivative claims for breach of the implied covenant of good faith and fair dealing and purported violations of c.93A, must be dismissed for failure to state a claim upon which relief can be granted.

WORCESTER PROFESSIONAL BASEBALL, LLC and PERFECT GAME BASEBALL CLUBS, LLC
By their attorneys,

Louis M. Ciavarra (BBO #546481)
James P. Hoban (BBO #633929)
Bowditch & Dewey, LLP
311 Main Street, P.O. Box 15156
Worcester, MA 01615-0156
(508) 791-3511

Date:    April 19 2005