UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| RI, Inc. d/b/a SEATING SOLUTIONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 05-CV-10365-JLT |
| GELLER SPORT, INC., GELLER DEVELLIS, | ) | |
| INC., WORCESTER PROFESSIONAL BASEBALL | ) | |
| LLC, and PERFECT GAME BASEBALL CLUBS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR AN
ATTACHMENT OF WORCESTER BASEBALL'S PERSONAL PROPERTY**

## I.      PRELIMINARY STATEMENT

RI Inc. d/b/a Seating Solutions ("Seating Solutions") requests an attachment in the amount of $591,414.90 upon the stadium materials and associated structures that Worcester Professional Baseball LLC ("Worcester Baseball") is building at Fitton Field in Worcester, Massachusetts.  In late February of 2005, Seating Solutions and Worcester Baseball entered into a contract.  Under that contract, Seating Solutions promised to complete a renovation of Fitton Field by May 15, 2005 so that the Worcester Tornadoes, a new minor league baseball team owned by Worcester Baseball, could play their home games there.  If Seating Solutions could not finish the stadium by that date, it would pay Worcester Baseball $50,000.00 for each week that the project remained incomplete.  Worcester Baseball agreed to compensate Seating Solutions generously for taking this risk.  The total contract price was $1,519,880.90.  Assuming that Seating Solutions incurred significant unanticipated costs, it conservatively expected to realize a profit of $591,414.00.  It could have realized much more, but Worcester Baseball never gave it a chance to do so.  Days after reaching a final agreement with Seating Solutions, Worcester Baseball terminated the agreement and hired a competitor to complete the Fitton Field project.

Seating Solutions has a reasonable likelihood of prevailing on its breach of contract claim. Its damages are reliably set forth herein. Worcester Baseball has no assets apart from its interest in the materials and buildings at Fitton Field with which it could pay the damages claimed. An attachment in the amount of $591,414.90 upon the bleachers, seating areas, concession areas, and press box at Fitton Field is warranted in this action.

## II.    FACTS

Seating Solutions is a leader in the seating system design and construction industry and specializes in the sale, rental, and timely installation of custom-designed spectator seating at athletic and recreational facilities. Affidavit of Scott Suprina ("Suprina"), dated May 20, 2005 ("Suprina Aff."), ¶ 2. Worcester Baseball is the owner and operator the Worcester Tornadoes, a professional baseball franchise that will begin playing in Worcester as part of the Canadian American Association of Professional Baseball during the Spring of 2005. *See id.* at ¶ 3. Suprina has been in the seating systems business for fifteen years and uses Outdoor Aluminum, Inc. ("Outdoor Aluminum") as his supplier. *See id.* at ¶¶ 2.

In December of 2005, Seating Solutions and Worcester Baseball began discussing the possibility that Seating Solutions would perform an extensive renovation of Fitton Field, which is located on the campus of the College of the Holy Cross ("Holy Cross"), so that Worcester Baseball could base its team there. *See id.* at ¶ 4. In or about late January 2005, Worcester Baseball entered into discussions with Holy Cross whereby Worcester Baseball would renovate Fitton Field and Holy Cross would allow the professional team to play baseball home games there. *See id.* Discussions between Seating Solutions, through vice president Scott Suprina, and Worcester Baseball accelerated significantly in or about the beginning of February 2005 and included preliminary drawings and design work. *See id.* at ¶ 5.

Suprina and his draftsman, Scott Ruczaj ("Ruczaj"), met with Tye and Maguire on or about February 15, 2005 and revised the drawings. *See id.* Seating Solutions modified its proposal based on the new drawings, and reduced the pricing to $1,519,880.90. *See id.* On or about Thursday, February 17, 2005, Worcester Baseball received a revised proposal from

- 3 -

Seating Solutions. *See id*. Suprina advised Tye that he would be in the Boston area on February 18, 2005 and arranged to meet with Tye so that an order could be placed as Tye was leaving town for a vacation. *See id*. at ¶ 6.

On or about Friday, February 18, 2005 Suprina and his associate Ross Jacobs flew to Boston and met with Tye. *See id*. At this meeting, Tye and Suprina, with Jacobs looking on, walked through each facet of Seating Solutions' February 17 Proposal and made revisions to the Proposal to satisfy certain of Worcester Baseball's concerns. *See id*. Suprina also shared Seating Solutions' plans for integrating I-Beam and angle frame construction on the project in a manner that would maximize quality while keeping costs lower than if the project had employed only I-Beam construction. *See id*. at ¶ 7. Suprina stated "Excuse me for being so blunt, but I must start work on Saturday to make your date. Do I have an order?" *See id*. Tye responded "Yes. You have an order." *See id.* At the close of this meeting, Tye shook hands with Suprina and confirmed that Worcester Baseball and Seating Solutions had an agreement concerning the renovations of Fitton Field. *See id*. at ¶ 8. Tye, with Suprina and Jacobs present, then told Worcester Baseball's president and chief executive officer Alan Stone that Worcester Baseball and Seating Solutions had reached an agreement. *See id*.

On the morning of Monday, February 21, 2005, Seating Solutions sent Worcester Baseball a final version of the agreement that had been reached based upon the revisions to which Tye and Suprina had agreed on the previous Friday. *See id*. at ¶ 9. On February 22, 2005, Worcester Baseball terminated its agreement with Seating Solutions. *See id*. On February 23, 2005, Suprina learned that Worcester Baseball had entered into a separate agreement with Dant Clayton Corporation ("Dant Clayton"), a seating systems company based in Louisville, Kentucky. *See id*.

It is likely that Dant Clayton will complete the Fitton Field Project in early June of 2005. *See id*. at ¶ 10. At that point, it will transfer ownership of the materials that make up the seating areas at Fitton Field, and the press box and concession areas to Worcester Baseball. *See id*. Worcester Baseball will then transfer ownership of these materials to Holy Cross, which will

lease the stadium back to Worcester Baseball for the Tornadoes' use. *See id*. Seating Solutions is unaware of assets other than the stadium that Worcester Baseball could use to satisfy any judgment obtained in this matter or of any insurance policy that would cover Seating Solutions' damages in this action. *See id*. at ¶ 11.

Past experience in the industry and internal analyses of the Fitton Field Project by Seating Solutions personnel led Seating Solutions to anticipate that its profit on this job would be at least $591,414.90. *See id.* at ¶ 12. The price that Worcester Baseball agreed to pay was $1,519,880.90. *See id*. Seating Solutions' cost of $928,466.00 breaks down as follows:

| Item | Cost |
| --- | --- |
| Seating materials (including bleacher and VIP flip-up chairs) from Outdoor Aluminum | $673,636.00 |
| Press Box | $59,230.00 |
| 2 dugouts (with cost of interior benches included) | $40,000.00 |
| Plastic lumber – includes a 3-4' high field wall and earth containment barrier at front of stand between dugouts | $20,000.00 |
| Installation budget -- $25.00 per seat | $95,600.00 |
| Dress up railing at back of crosswalk and stand sides, chain link rail on stairs | $40,000.00 |
| **Total costs** | **$928,466.00** |

*See id.*

This cost figure is conservative. *See id*. at ¶ 13. Seating Solutions previously obtained custom dugouts for a stadium in Lynn, Massachusetts for $26,184.00 and shipping costs of $1,380.00. *See id*. The installation costs would also most likely be less than $25.00 per seat. *See id*. On three recent jobs, Seating Solutions' per-seat installation cost was $17.34, $18.30, and $22.96. *See id*. It is rare to have unanticipated material costs. *See id*. It is thus unlikely that

- 5 -

Seating Solutions and Outdoor Aluminum would experience a higher material cost than $673,636.00. *See id.*[1]

### III.    DISCUSSION

#### A.    Standard of Review

A plaintiff is entitled to attachments on a defendant's personal property where "there is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the attachment over and above any liability insurance shown by the defendant to be available to satisfy the judgment."  Mass. R. Civ. P. 4.1(c); *see also* M.G.L. c. 223, § 42; *Aetna Cas. & Sur. Co. v. Rodco Autobody*, 138 F.R.D. 328, 332 (D. Mass. 1991) (same).  Mass. R. Civ. P. 4.1 is applicable in this court pursuant to Fed. R. Civ. P. 64.  *See Hamilton v. Arnold,* 135 F. Supp. 2d 99, 104 (D. Mass. 2001) ("Pursuant to Fed. R. Civ. P. 64, the remedy of attachment is available under the circumstances and in the manner provided by the law of the state in which the district court is held."); *Johnson v. Koplovsky Foods, Inc.*, 5 F. Supp. 2d 48, 51 (D. Mass. 1998) (same).

#### B.    Seating Solutions is Entitled to an Attachment of $591,414.90.

##### 1.    Seating Solutions Will Prevail on the Merits of its Contract Claim

The existence of a contract, and Worcester Baseball's subsequent breach of that contract, are clear.  At the February 18, 2005 meeting, Suprina (Seating Solutions) and Tye (Worcester Baseball) hammered out all of the essential terms of their agreement.  *See* Suprina Aff. at ¶¶ 6 -8. Suprina asked Tye to confirm that Worcester Baseball would use Seating Solutions for the Fitton Field Project.  *See id.* at ¶ 7.  Tye responded affirmatively in response to this request.  *See id.* Tye repeated that the parties had an agreement at the close of the meeting and shook Suprina's hand.  *See id*. at ¶ 8.  Immediately thereafter, Tye told Worcester Baseball's president, Alan Stone, that Worcester Baseball and Seating Solutions had entered into a contract.  *See id*.

---

[1]Mr. Suprina's experience with Outdoor Aluminum leads him to believe that the material cost would actually be less than $673,636.00.  *See* Suprina Aff. at ¶ 13.

A jury would be reasonably likely to conclude from these events that Worcester Baseball and Seating Solutions had a contract. *See Chedd-Angier Prod. Co., Inc. v. Omni Publ'ns Int'l, Ltd.,* 756 F.2d 930, 935 (1st Cir. 1985) ("[U]nder Massachusetts law even where a writing was contemplated by the parties, if sufficient evidence exists to show that an oral contract has been entered into, the parties' intention to memorialize the contract in writing does not defeat the existence of an oral contract."); *White Spot Constr. Corp. v. Jet Spray Cooler, Inc.*, 344 Mass. 632, 634, 183 N.E.2d 719, 721 (1962) ("The jury was warranted in finding that the parties entered into a bilateral contract at the time [they] shook hands . . . ."); *Hunneman Real Estate Corp. v. Norwood Realty, Inc*., 54 Mass. App. Ct. 416, 423, 765 N.E.2d 800, 806 (2002) ("Notwithstanding the importance of protecting negotiating parties from involuntary judicially imposed contract[s], it is equally important that courts enforce and preserve agreements that were intended as binding, despite a need for further documentation or further negotiation."), *rev. denied*, 437 Mass. 1105, 772 N.E.2d 590 (2002); *ESO, Inc. v. Kasparian*, 32 Mass. App. Ct. 731, 733-34, 594 N.E.2d 557, 559 (1992) ("It is well-settled that an agreement need not be in writing to be enforceable."); *Novel Iron Works, Inc. v. Wexler Constr. Co., Inc.*, 26 Mass. App. Ct. 401, 408, 528 N.E.2d 142, 146 (1988) ("If . . . the parties orally agree to the essential terms of the transaction, it may be inferred that they intended to bind themselves at that time . . . ."), *rev. denied*, 403 Mass. 1104, 530 N.E.2d 797 (1988).

The evidence of breach is also clear. On the morning of Monday, February 21, 2005, Seating Solutions sent Worcester Baseball a final version of the agreement that had been reached based upon the revisions to which Tye and Suprina had agreed on the previous Friday. *See* Suprina Aff. at ¶ 9. On February 22, 2005, Worcester Baseball terminated its agreement with Seating Solutions. *See id*. On February 23, 2005, Suprina learned that Worcester Baseball had entered into a separate agreement with Dant Clayton, a seating systems company based in

Louisville, Kentucky.  *See id*.  A jury would be reasonably likely to find for Worcester Baseball on its contract claim.[2]

### 2.        Seating Solutions Is Reasonably Likely to Recover at least $591,414.00.

Seating Solutions' anticipated profit on the Fitton Field Project was $591,414.00.  Lost profits, if established by reliable evidence, are an appropriate measure of damages in this context.  *Computer Systems Engineering, Inc. v. Qantel Corp.*, 740 F.2d 59, 67 (1st Cir. 1984) (confirming that under Massachusetts law "damages for lost profits need not be proved with mathematical certainty, provided an award has a rational basis in the evidence"); *Urico v. Parnell Oil Co.*, 708 F.2d 852, 856 (1st Cir. 1983) ("Lost profits may be regarded as an element of damage when they can be established by reliable evidence."); *Providence Granite Co., Inc., v. Joseph Rugo, Inc.*, 362 Mass. 888, 889, 291 N.E.2d 159, 160 (Mass. 1972) ("Upon appropriate proof, lost profits may be a proper element of damages."); *Coyne Indus. Laundry of Schenectady, Inc. v. Gould*,  359 Mass. 269, 277, 268 N.E.2d 848, 853 (1971) ("We hold that the master's alternative finding of net profits (being the measure of 'lost opportunity') is therefore the proper measure of damages in this case."); *Rombola v. Cosindas*, 351 Mass. 382, 385, 220 N.E.2d 919, 922 (1966) ("We think . . . that [the plaintiff] would be entitled to show substantial damages on the theory of loss of prospective profits.").

Seating Solutions has set forth its internal profit analysis in significant detail.  *See* Suprina Aff., ¶¶ 12-14.  This analysis is conservative, based on Seating Solutions' past experience installing similar seating systems.  *See id*. at ¶ 13.  It is extremely likely that Worcester Baseball will question the reasonableness of Seating Solutions' anticipated profit on the Fitton Field project.  A profit of $591,414.90 on this job is reasonable due to its challenging nature.  *See id*. at ¶ 14.  The Tornadoes have to start their home season at least two weeks late because the stadium has not been completed by the company that Worcester Baseball decided to

---

[2] For additional discussion of the strength of Seating Solutions' contract claim, *see* Plaintiff's Opposition to Worcester Baseball's Motion to Dismiss (Document No. 11).

- 8 -

use after breaching the contract with Seating Solutions. *See id.* Seating Solutions guaranteed Worcester Baseball that Seating Solutions and Outdoor Aluminum would be able to complete the project in a timely manner and even promised Worcester Baseball that it would pay $50,000.00 per week for each week after May 15, 2005 that the stadium was not completed. *See id.* Seating Solutions therefore faced a huge penalty if we could not complete the job on time. *See id.* To offset this potential downside, and to account for the challenge of turning the job around so quickly, Seating Solutions and Worcester Baseball agreed upon a higher price. *See id.*

**3.     An Attachment is Necessary to Secure Seating Solutions' Anticipated Recovery.**

The judgment that Seating Solutions obtains in this matter will be worthless if Worcester Baseball has no assets with which it can pay that judgment. Dant Clayton will most likely complete the Fitton Field Project in early June of 2005. *See id.* at ¶ 10. Dant Clayton will then transfer ownership of the materials that make up the seating areas at Fitton Field, the press box, and concession areas to Worcester Baseball. *See id.* Worcester Baseball will, in turn, transfer ownership of these materials to Holy Cross, which will lease the stadium back to Worcester Baseball for the Tornadoes' use. *See id.* Worcester Baseball, furthermore, is a startup company owned by individuals with no experience in the operation of a professional sports franchise. Its chances for success as a going concern are unpredictable. Seating Solutions is unaware of assets other than the stadium or any insurance policy that Worcester Baseball could use to satisfy any judgment obtained in this matter. *See id.* at ¶ 11.

Worcester Baseball may claim, as a result of this arrangement, that it has no current interest in the Stadium and that its future interest cannot be attached. This is incorrect. Future interests are subject to attachment under Massachusetts law. *See* Mass. Gen. Law ch. 236, § 1 (stating that among the rights subject to execution include land "in remainder or reversion"); *Hazelton v. Lesure*, 91 Mass. 24, 27 (1864) (upholding attachment of remainder interest in life estate); 48 Mass. Prac. Ser., *Collection Law*, § 4.46 (2000) ("A future interest in real property may be attached.").

- 9 -

## IV.    CONCLUSION

Seating Solutions respectfully requests that its motion for an attachment in the amount of $591,414.90 be granted.

Respectfully Submitted,

RI, INC. d/b/a SEATING SOLUTIONS


/s/                                    Terry Klein
THE LAW OFFFICE OF TERRY KLEIN
Terry Klein, BBO# 652052
1558 Dorchester Avenue, Ste. 202
Dorchester, Massachusetts  02122
Telephone: (617) 825-8175
Dated:  May 25, 2005                   Facsimile: (617) 507-6454


## CERTIFICATE OF SERVICE

I, Terry Klein, hereby certify that on May 25, 2005, a true copy of the above document was served by first class mail upon counsel for each other party.

/s/             Terry Klein