UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RI, Inc., d/b/a SEATING SOLUTIONS,<br>Plaintiff<br><br>v.<br><br>GELLER SPORT, INC., GELLER DEVELLIS,<br>INC., WORCESTER PROFESSIONAL BASEBALL<br>LLC, and PERFECT GAME BASEBALL CLUBS,<br>LLC,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL ACTION NO.<br>05-CV-10365-JLT |

**OPPOSITION OF WORCESTER PROFESSIONAL
BASEBALL, LLC, AND PERFECT GAME BASEBALL
CLUBS, LLC, TO PLAINTIFF'S MOTION
FOR ATTACHMENT AND REQUEST FOR ORAL ARGUMENT**

INTRODUCTION

Defendants Worcester Professional Baseball, LLC and Perfect Game Baseball Clubs, LLC (hereinafter referred to as "Worcester Baseball"), oppose Plaintiff R.I., Inc., d/b/a Seating Solutions' ("Plaintiff") efforts to obtain the extraordinary relief of pre-judgment attachment of personal property.

Pursuant to Federal Rule of Civil Procedure 64, the granting of an attachment is controlled by state law. Massachusetts Rule of Civil Procedure 4.1 requires that the moving party has the burden of establishing a likelihood of success on the merits of its claim in order to obtain a pre-judgment attachment. Based upon the current state of the record, Plaintiff has not met this burden.

At best, the record describes a situation of unfulfilled expectations and negotiations; not a situation where a binding legal contract was ever agreed to by the

parties. To the contrary, the written "proposal" <u>prepared by the Plaintiff</u> specifically provides that it is conditioned upon "receipt of a signed proposal and deposit by February 22, 2005 only." (A copy of the proposal is attached hereto as <u>Exhibit A</u>.) It is undisputed that the document was never signed by Worcester Baseball and no deposit was ever paid. In fact, prior to the due date imposed by the Plaintiff, Worcester Baseball notified Plaintiff that they were rejecting the proposal and moving in a different direction. There was simply no legal contract ever entered into between the parties. As such, Plaintiff cannot meet its burden of demonstrating it has a likelihood of success on the merits of its claims. Moreover, the Court may consider all the attendant circumstances including, *inter alia*, the strength of the Plaintiff's case and the location, present use, value, and interests in the assets sought to be attached in determining whether to grant an attachment. See <u>Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc.</u>, 492 F. Supp. 1383, 1390 (D.Mass. 1980). Even if Plaintiff could show a likelihood of success, which it cannot, those factors clearly weigh against the granting of any attachment here.

    The strength of Plaintiff's case is not compelling, as it is clear that Plaintiff did not intend to be bound as of the date of the purported oral agreement as it continued to insist in the written proposal it circulated thereafter on, among other things, the receipt of an executed original and a ten percent (10%) deposit for the terms and conditions proposal to be binding upon it. Moreover, pursuant to its agreement with the College of the Holy Cross ("Holy Cross"), Worcester Baseball is obligated to transfer the improvements to Fitton Field sought to be attached to Holy Cross free and clear of any encumbrances or liens in exchange for Holy Cross's agreement to allow Worcester

Baseball to use Fitton Field for the Tornadoes' home games. As such, the granting of the requested attachment would arguably constitute a breach of Worcester Baseball's agreements with Holy Cross and could affect Worcester Baseball's ability to the use of Fitton Field for the Tornadoes' home games, for which thousands of tickets have already been sold. Finally, contrary to Plaintiff's unsupported allegations, Worcester Baseball has substantial assets and significant corporate sponsors. Thus, there are assets sufficient to satisfy any recovery against Worcester Baseball.

## MATERIAL FACTS

In this case, Plaintiff's Complaint revolves around an alleged contract with Worcester Baseball. Plaintiff admits that it does not have a signed written contract. (Amended Complaint, ¶¶ 16-19, 21-22, 26-27, 29-30, 32-36, 38.) Rather, it claims that the written document was in the process of being negotiated. (Id.) Plaintiff claims that while these negotiations were ongoing, a representative of Worcester Baseball indicated orally that they "had a deal." (Amended Complaint, ¶¶ 32-33.) While Worcester Baseball denies that such a promise was ever made, the undisputed facts are that several written documents were prepared by the Plaintiff, each entitled "proposal."[1] (Amended Complaint, ¶¶ 16-19, 21-22, 26-27, 29-30, 32-36, Exs. A and B; Affidavit of Alan Stone ("Stone Aff."), filed herewith, ¶¶ 2-3.) Indeed, for its own protection, each proposal submitted by the Plaintiff required that it be signed and returned with a ten percent (10%) deposit in order to be accepted. In fact, even after the purported oral agreement was reached, Plaintiff sent out a "final" proposal which was expressly conditioned on "receipt of a signed proposal and deposit by February 22, 2005 only." (See Exhibit A attached hereto.) It is undisputed that this proposal was never signed by Worcester Baseball and

---

[1] Worcester Baseball submits the Affidavit of Alan Stone in support of this Opposition.

no deposit was ever paid. (Amended Complaint ¶ 35; Stone Aff., ¶¶ 2-3.) In fact, on February 22, 2005, Worcester Baseball terminated negotiations and notified the Plaintiff that it was not going to accept the proposal. (Amended Complaint ¶ 38.) It is well established under Massachusetts law that there is no obligation to accept even the most favorable proposal. See Cronin v. National Charlotte Bank, 306 Mass. 202, 210 (1940). There was simply no contract ever executed here between the parties.

While Worcester Baseball was negotiating with the Plaintiff regarding potentially providing equipment and structures for the improvements at Fitton Field at the College of the Holy Cross, a number of proposals were made by the Plaintiff and considered by Worcester Baseball. (Stone Aff., ¶ 2.) Each of those proposals was in writing and stated, clearly and unequivocally, that it was a "proposal" and that it was conditioned upon "the receipt of a signed proposal and deposit." (Id.) Worcester Baseball never accepted a proposal from the Plaintiff, never signed a proposal from the Plaintiff, and never paid the Plaintiff a deposit. (Id.)

Indeed, at all times Worcester Baseball made it absolutely clear to the Plaintiff that it was reviewing other proposals and that nothing was guaranteed until the appropriate documents were reviewed, approved, and signed. (Stone Aff., ¶ 3.) Worcester Baseball clearly and unequivocally advised the Plaintiff that it should not assume it had the project and that it would not have the project until all of the negotiations were complete and the agreements were reviewed and signed. (Id.) No representative of Worcester Baseball ever promised the Plaintiff that they had a deal. (Id.)

Worcester Baseball purchased the franchise from the league with a deposit of Five Hundred Thousand Dollars ($500,000.00). (Stone Aff., ¶ 5.) Worcester Baseball has substantial corporate sponsors, including Hanover Insurance, Commerce Bank, Unum Provident, TD Banknorth and WB Mason. (Id.) Worcester Baseball has received over Two Million Dollars ($2,000,000.00) of capital investment, has sold thousands of tickets, and currently has over twenty (20) players under contract. (Id.) Contrary to Plaintiff's unsupported allegations, there will be sufficient assets to satisfy any reasonable judgment that could be rendered in Plaintiff's favor in this action. (Id.)

The agreement Worcester Baseball reached with the College of the Holy Cross, requires Worcester Baseball to transfer to the improvements being made at Fitton Field to Holy Cross in exchange for its agreement to allow Worcester Baseball to use the field in order to bring professional baseball to Worcester. (Stone Aff., ¶ 6.) Worcester Baseball agreed to transfer those assets to Holy Cross free and clear of any liens or encumbrances. (Id.) If this Court were to grant the attachment, it would arguably constitute a breach of Worcester Baseball's agreement with Holy Cross. (Id.) While the repercussions of such a breach are uncertain at this time, clearly it could disrupt the relationship as well as the potential ability to play baseball at the Fitton Field in the future. (Id.)

## ARGUMENT

I. <u>Plaintiff Cannot Demonstrate A Likelihood of Success On The Merits Of Its Claims</u>.

Under Massachusetts law, the expression of a willingness to receive and consider proposals is not an offer. See <u>Cronin v. National Shawmut Bank</u>, 306 Mass. 202, 210 (1940). "There is no obligation to accept the most favorable proposal received or to accept any proposal at all." (Id.) Indeed, any and all proposals may be rejected for any

reason or for no reason at all and the mere ongoing exchange of draft documents does not give rise to a contract. (Id.) See also Tull v. Mister Donut Dev. Corp., 7 Mass. App. Ct. 626, 632 (1979). Parties often require receipt of signed documents before being bound to any proposal. "Business men would be undesirably inhibited in their dealings if expressions of intent and the exchange of drafts were taken as legally binding agreements." Tull, 7 Mass. App. Ct. at 632. Language looking to the execution of a final written agreement, as present here,[2] justifies a strong inference that the parties do not intend to be bound. See Rosenfield v. United States Trust Co., 290 Mass. 210, 216 (1935); Wasserman v. Roach, 336 Mass. 564, 568 (1958); Goren v. Royal Invs. Inc., 25 Mass. App Ct. 137, 140 (1987).

Here, there are clear indications that the parties did not intend to be bound. The last proposal intentionally refers to itself as a "proposal" no fewer than five times. Indeed, for its own protection, the final proposal submitted by Plaintiff, by its express terms, required that it be signed[3] and returned with a 10% deposit[4] in order to be binding. Moreover, the negotiations to that point also reveal that the parties did not intend to be bound until an AIA Contract was agreed to and executed. (Amended Complaint, Exs. A and B.)

There is no allegation that any proposal was ever signed and returned with the required deposit. As such, no proposal was accepted by Worcester Baseball and, indeed, Worcester Baseball affirmatively advised Plaintiff that it was rejecting its final proposal.

---

[2] In this regard, the "proposal" was required to be initialed on every page by the customer, signed and returned with a deposit. Thereafter, plans were required to be approved and an AIA contract was to be agreed to and executed. None of these things took place.
[3] In this regard, the "proposal" includes a line for "Authorized Signature of Acceptance," and requires the potential customer to "place your initial next to each page of this proposal, sign the terms page where appropriate and return the entire proposal to Seating Solutions."
[4] Based on the allegations of the Amended Complaint, the deposit required by the final "proposal" submitted by Plaintiff totaled $151,988.00. (See Amended Complaint, Ex. B.)

Similarly, there is no evidence or allegation that an AIA Contract was agreed to or executed. In such circumstances, there simply is no contract.

Moreover, Worcester Baseball unequivocally denies that any of its representatives ever represented to Plaintiff that they had a deal. (Stone Aff., ¶¶ 2-3.) There is no evidence of any such representation by any Worcester Baseball representative other than Plaintiff's self-serving allegations. There is no correspondence confirming such an agreement. No documents were signed by Worcester Baseball. No deposit paid. Worcester Baseball did not thereafter refuse to accept competing proposals. There is no evidence or allegation that any materials were ordered by Plaintiff based on any such oral agreement. Indeed, Plaintiff's own action in resubmitting yet another "proposal" after purportedly reaching the final agreement rather than the final AIA Contract and its continued insistence in that proposal of the receipt of a signed original and a deposit to make its terms and conditions binding, demonstrates that it understood that no binding agreement had been reached and that Plaintiff did not intend to be bound by the alleged oral exchange.

II.  **The Attendant Circumstances Weigh Against The Granting Of An Attachment.**

It should be clear that the Plaintiff cannot establish at this time a likelihood of success on the merits of its claim. However, even if there was any doubt on this issue, and while the Court is not required to balance the harms when considering an attachment as it is when considering a request for injunctive relief, at least two judges in this district have recognized that it is important to consider the impact of the attachment on the opposing party and on third parties. In Hasbro, Inc. v. Serafino, Judge Ponsor opined that:

> It is one thing, however, when an attachment protects a plaintiff's interest, but hardly burdens a defendant's day-to-day needs. It is quite another when an attachment acts to freeze a defendant's assets to which access is otherwise necessary – for attorneys fees, for example, particularly when those assets are unrelated to the underlying suit.

958 F.Supp. 19, 26, (D. Mass. 1997). In an earlier case, Judge W. Arthur Garrity, Jr. noted that:

> The propriety of attachments depends on the attendant circumstances, including the apparent strength of the plaintiff's case and the location, current use, valuation and current interest in the properties sought to be attached.

<u>Anderson Foreign Motors, Inc. v. New England Toyota Distributor, Inc.</u>, 492 F.Supp. 1383, 1390 (D. Mass. 1980).[5]

Thus, the Court must consider the consequences if the requested relief is granted. Plaintiff is correct in its general description of the arrangements between Worcester Baseball and Holy Cross. In order to utilize Fitton Field, Worcester Baseball agreed to transfer the bleachers, concession areas, and other improvements to Holy Cross. It agreed to do so free and clear of any liens. If the Court grants this relief, then Worcester Baseball will not be able to honor the terms of its commitment to Holy Cross, which could have an immediate impact on the utilization of the field and the playing of baseball. Thousands of tickets have been sold, hundreds of thousands of dollars raised from corporate sponsors and investors, and commitments made to over twenty (20) baseball

---

[5] In fact, the Massachusetts Legislature has recognized that the interest of third parties must be protected whenever an attachment is granted. Pursuant to Massachusetts General Law, Chapter 223, §74, if a party obtains attachment on a property that is subject of a conditional sales contract, such as it is here, then the moving party must pay the full amount due within ten (10) days. In this way, the Legislature has recognized that it is essential to protect the rights of innocent third parties.

players who are under contract. There is simply no reason presented in Plaintiff's papers to disrupt and potentially destroy all of those contracts and relationships.

The Plaintiff has asked the Court to utilize its equitable powers to provide it with pre-judgment security. The Plaintiff claims that it will have a hollow victory in that the Defendants will not have sufficient assets to satisfy the judgment. First, there are defendants here other than Worcester Baseball. In fact, the co-defendants have indicated in their Initial Disclosure that they have insurance available. In addition, while Worcester Baseball does not have insurance for these claims, it does have substantial assets, including the franchise purchased from the Canadian American Baseball League, for which it paid a deposit of Five Hundred Thousand Dollars ($500,000.00). The team has been formed and began playing its home games in Worcester on June 6, 2005. Millions of dollars has been raised in capital. The business has a permanent office, a substantial payroll and corporate sponsors, including Hanover Insurance, Commerce Bank, Unum Provident, TD Banknorth and WB Mason. This is a real company with real defenses to the baseless claims. There is simply no reason to provide Plaintiff with the extraordinary relief requested here.

## CONCLUSION

Plaintiff cannot meet its burden of demonstrating a likelihood of success on the merits of its claims in this action and therefore its Motion for Attachment must be denied. Moreover, even if Plaintiff could meet its required showing, which it cannot, it would be appropriate to deny the relief requested based on the attendant circumstances, including, *inter alia*, the potential disruption of Worcester Ball's contracts and relationships with

Holy Cross, ticket holders, and the Tornadoes' players, and its potential impact on the Tornadoes' ability to pay their home games at Fitton Field.

**ORAL ARGUMENT IS REQUESTED.**

                WORCESTER PROFESSIONAL
                BASEBALL, LLC, and PERFECT GAME
                BASEBALL CLUBS, LLC
                By their attorneys,

                _____
                Louis M. Ciavarra (BBO #546481)
                James P. Hoban (BBO #633929)
                Bowditch & Dewey, LLP
                311 Main Street, P.O. Box 15156
                Worcester, MA 01615-0156
                (508) 791-3511

Date: June 8, 2005

**CERTIFICATE OF SERVICE**

    I, James P. Hoban, hereby certify that I have on this 8th day of June 2005 served the foregoing by mailing copies thereof, postage prepaid, to:

                David J. Hatem, Esquire
                Hatem & Donovan, P.C.
                Two Seaport Lane
                Boston, MA 02210

                Terry Klein, Esquire
                1558 Dorchester Avenue
                Dorchester, MA 02122

                _____
                James P. Hoban

# **EXHIBIT A**



# SOLUTIONS

63 Oser Avenue
Hauppauge, NY 11788
Phone: 631-845-0449
Fax: 631-845-0470

www.sitonthis.com

## PROPOSAL

February 21, 2005

Mr. Ted Tye
Worcester Professional Baseball, LLC
PO Box 2221
Worcester, MA 01613-2221

Re: Fitton Field

Dear Ted,

Here is our final proposal based on the Fitton Field drawings dated 2/15/05.

Approximately 3187 seats delivered and assembled, includes 1706 Outdoor Aluminum flip-up chairs numbered with arms.
512 each Bleachair seats at same price as aluminum backrest
969 each bench seat only.
Includes rear crosswalk and all stairways
Two ADA field level platforms with vomitory access
Two complete dug-outs/prefabricated with electric package
Two front field walls – plastic lumber and aluminum
Two field wall entry gates
One each press box with photo platform
Drink rails around party deck with modesty panel
Elevated bleacher seating system

Note, complete system is Tredweld all aluminum deck with mounting channels and contrasting aisle nosing. Complete front 10 rows aluminum square tube frame combo. Decking and hillside is galvanized I-Beam.

Please note that I have included Outdoor Aluminum flip-up chair, an excellent, comfortable and durable product that I strongly recommend.

Price delivered and assembled:                $1,519,880.90

Pricing excludes concrete, electric and water connections. Earthwork by others. Pricing does not include any applicable sales tax and is based on Seating Solutions standard levels of insurance. An insurance certificate will be provided. General Liability $1,000,000.00 per occurrence and $2,000,000.00 general aggregate; $1,000,000.00 Automobile Liability.

Note, if you would like to consider an Irwin Patriot chair I can offer it to you. I do not recommend it. Consider it is spring activated and requires maintenance and it is not engineered for this deck although I will supply an adaptor bracket. The most important part is that I would not guarantee Irwin's delivery time.
Add $44.00 per chair installed.

I want this project to be a showcase for Seating Solutions so I will offer you the following. With your order, if you would like us to do the upper deck bathrooms we will do it at our cost $50,000.00. This way we control the support and placement. Bathroom must be included and must be provided by March 15, 2006

We will provide stamped engineered drawings for your approval. We will design concrete footings and Worcester Professional Baseball, LLC is to provide soil information. All plans (stands and footings) must be signed by MA architect and MA Structural Engineer. All plans must conform with ADA requirements.

The pricing and terms are based on receipt of a signed proposal and deposit by February 22, 2005 only.
Terms: 10% deposit; 25% on drawing approval; 25% on 1st delivery, 25% on last delivery and 15% on completion.
Note, to fast-track this project your contract and payments, with the exception of the deposit check, will be made to Outdoor Aluminum, Inc. c/o Seating Solutions. Please make deposit check out to Seating Solutions.

When the design is confirmed I will include a schedule of seat style values to allow for addition or subtraction of seats in final design and debit or credit of such.

Please keep in mind that we can easily add extra bleachers down the first and third base lines in the future. We could offer them as a rental even in the first or second season.

*Terms and Conditions*
All prices quoted are subject to the following terms and conditions.
All measurements are approximate.
Price does not include any permits or bonds required.
Due to variations in local codes and safety criteria, it is the responsibility of customer to notify us in writing of any specific codes or safety requirements you may have. Plans must comply with ADA requirements.
Once delivery/installation times have been established any changes to the schedule due to inaccessibility to our equipment or elevator access will result in a charge of $50.00 per man, per hour.
Any changes to delivery, installation or removal of date or time should be in written notice to our office 24 hours prior.
Price based on installation area being free of obstacles and clear for the crews to do the work outlined.
Should the buyer choose, for any reason, to delay installation or assembly when the

product is fabricated and ready for delivery all money due on delivery will be immediately paid.

Should the buyer choose to delay installation or assembly of any part of the product, causing a split installation or assembly all money due on completion will be paid in full on completion of the first phase of the installation/assembly.

It is the policy of Seating Solutions to make no more than one visit to the site prior to delivery. Once on the site for installation of the product our crew foreperson will attend job site meetings on an "as needed" basis only.

Any and all liability on RI Inc./Seating Solutions and by Worcester Professional Baseball LLC under this agreement is limited to fees paid plus penalties outlined herein.

Any controversy or claim arising out of this contract may be settled by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. The arbitration hearing is to be held in Massachusetts. Either party may also pursue a claim in a Massachusetts Court.

Penalties:
-There shall be a penalty of $50,000.00 per week for late delivery. Penalties shall begin to accrue if the material is not installed and substantially complete and in compliance with plans and specifications by May 15, 2005.
-Seating Solutions will provide a delivery and installation schedule by 2/24/05.
-This agreement is subject to an AIA Contract.

Material Status: Materials Delivered and Assembled
Please place your initials next to each page on this proposal, sign the terms page where appropriate and return the entire proposal to Seating Solutions.
Please fill in date of first use or substantial completion: May 15, 2005.

**The pricing and terms are based on receipt of a signed proposal and deposit by February 22, 2005 only.**

**Terms: 10% deposit; 25% on drawing approval; 25% on 1st delivery, 25% on last delivery and 15% on completion.**
Note, to fast-track this project our contract and payments, with the exception of the deposit check will be made to Outdoor Aluminum, Inc. c/o Seating Solutions. Please make deposit check out to Seating Solutions.
**Total Contract Amount: $1,519,880.90**

I look forward to working with you. Thanks for the opportunity.

Sincerely,


Scott Suprina – Vice President


_____     _____
Authorized Signature of Acceptance                              Date


_____
Print Name and Title