UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RI, Inc. d/b/a SEATING SOLUTIONS,

                Plaintiff,

v.

GELLER SPORT, INC., GELLER DEVELLIS,
INC., WORCESTER PROFESSIONAL BASEBALL
LLC, and PERFECT GAME BASEBALL CLUBS, LLC,

                Defendants.

CIVIL ACTION
NO. 05-CV-10365-JLT

## CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS UPON WHICH THE DEFENDANTS, GELLER SPORT, INC. AND GELLER DEVELLIS, INC., MOTION FOR SUMMARY JUDGMENT IS BASED

The defendants, Geller Sport, Inc. and Geller DeVellis, Inc. ("Geller"), respectfully submit the Statement of Undisputed Material Facts upon which they base their entitlement to Summary Judgment.

### UNDISPUTED MATERIAL FACTS

1. The plaintiff, RI, Inc. d/b/a Seating Solutions ("Seating Solutions"), is a company involved in the seating system design and construction industry that specializes in the sale, rental, and installation of custom-designed spectator seating at athletic and recreational facilities. Amended Complaint, ¶9[1]. Scott Suprina ("Suprina") operates as the Chief Executive Officer for Seating Solutions. Deposition of Scott Suprina, pg 6, lines 21-24, Exhibit 1

---

[1] Geller cites to the Amended Complaint for purposes of this motion. Geller otherwise reserves the right to contest the allegations in the complaint.

1

2. Worcester Professional Baseball, LLC ("Worcester Baseball"), is the owner and operator of the Worcester Tornadoes, a professional baseball franchise that is a member of the Canadian American Association of Professional Baseball, which began playing in the Spring of 2005. Amended Complaint, ¶11; Answer to the Amended Complaint of Worcester Baseball, ¶11. Worcester Baseball was engaged in efforts to secure a location for its Baseball team to play ("the Project"). Deposition of Alan Stone, pg 26, lines 5-8, Exhibit 3.

3. Alan Stone ("Stone") is the president and chief executive officer for Worcester Baseball. Deposition of Alan Stone, pg 9, lines 13-19, Exhibit 3. Stone is authorized to make decisions, enter into contracts, and hire and fire staff. Deposition of Alan Stone, pg 15, lines 15-22, Exhibit 3. Stone is the only person who signs contracts for Worcester Baseball. Deposition of Alan Stone, pg 30, lines 14-18, Exhibit 3. Ted Tye ("Tye") is the Chairman of the Board of Directors for Worcester Baseball. Deposition of Ted Tye, pg 19, lines 14-17, Exhibit 2.

4. Geller provides recreation and athletic facility design consulting services. Amended Complaint, ¶10; Answer to the Amended Complaint of Geller, ¶10. Geller was hired by Worcester Baseball to act as a consultant to Worcester Baseball for the Project. Deposition of Alan Stone, pg 90, lines 7-9, Exhibit 3. As a consultant, Geller's roles were to assist Worcester Baseball in evaluating different locations for the baseball park, to provide master planning for the park, to provide the ultimate engineering plans and site plans for the selected location, and to assist in evaluating firms for the seating installation on the Project. Deposition of Ted Tye, pg 44, lines 17-24, pg 45, lines 1-6, Exhibit 2.

Worcester Baseball's primary contact at Geller, for the Project, was Patrick Maguire ("Maguire"). Deposition of Ted Tye, pg 46, lines 6-8, Exhibit 2.

5. Beginning in or around December 2004, Seating Solutions began having discussions with Worcester Baseball regarding a potential contract to design, sell, and install seats at Fitton Field, located on the campus of Holy Cross, as part of the Project. Amended Complaint, ¶12.

6. Seating Solutions submitted to Worcester Baseball a proposal and some preliminary drawings and design work in connection with these ongoing discussions. Amended Complaint, ¶¶17-18. The initial proposal was rejected by Worcester Baseball. Amended Complaint, ¶21.

7. A second revised proposal by Seating Solutions was submitted on or about February 15, 2002, and similarly was rejected. Amended Complaint, ¶¶26-27, 30.

8. A third revised proposal by Seating Solutions was submitted to Worcester Baseball on or about February 17, 2005, which was rejected and never signed by Worcester Baseball. Deposition of Ted Tye, pg 146, lines 1-24, Exhibit 2; February 17, 2005, revised proposal, Exhibit 4.

9. A fourth revised proposal by Seating Solutions was submitted to Worcester Baseball on or about February 21, 2005, and was also rejected. Amended Complaint, ¶¶28-30, 38. The February 21, 2005 revised proposal was never signed by anyone. Deposition of Scott Suprina, pg 121, lines 18-21, Exhibit 1

10. The February 21, 2005 revised proposal required a signature by Worcester Baseball and deposit by February 22, 2005 to lock in the pricing and terms of the agreement. February 21, 2005, revised proposal, Exhibit 5. Seating Solutions never received a deposit by

February 22, 2005. Deposition of Scott Suprina, pg 122, lines 1-19, page 123, lines 12-24, Exhibit 1. The effect of Seating Solutions not having a signed proposal and not having the deposit is that the price or the terms of the contract could change at Seating Solutions discretion. Deposition of Scott Suprina, pg 128, lines 4-24, pg 129, lines 1-24, pg 130, lines 1-16, Exhibit 1

11. Seating Solutions sent a final revised proposal to Worcester Baseball on February 22, 2005. Deposition of Scott Suprina, pg 156, lines 17-24, pg 157, lines 1-24, Exhibit 1 The February 22, 2005 proposal was never signed by Worcester Baseball. Deposition of Scott Suprina, pg 157, lines 18-24, Exhibit 1

12. Eventually Worcester Baseball accepted a proposal from another contractor, Dant Clayton Corporation ("Dant Clayton"). Amended Complaint, ¶39.

13. Worcester Baseball denies that a contract existed between it and Seating Solutions. Affidavit of Alan Stone, ¶¶2-3, Exhibit 8. Worcester Baseball never orally agreed to a contract with Seating Solutions on February 18, 2005, as Seating Solutions claims. Deposition of Ted Tye, pg 136, lines 5-24, pg 137, lines 1-18, Exhibit 2. Tye did not tell Suprina on February 18, 2005 that they had a "deal" or an "order." Deposition of Ted Tye, pg 164, lines 20-24, pg 165, lines 1-6, Exhibit 2. Suprina knew that any contract executed by Worcester Baseball would have to be signed by Stone. Deposition of Scott Suprina, pg 114, lines 22-24, Exhibit

14. No materials were ever shipped to Seating Solutions from its seating manufacturer, Outdoor Aluminum, for this Project. Deposition of Scott Suprina, pg 100, lines 2-6, Exhibit 1. Seating Solutions never paid any money to Outdoor Aluminum for this Project. Deposition of Scott Suprina, pg 102, lines 1-22, Exhibit 1.

15. Maguire was not at the February 18, 2005 meeting where Seating Solutions claims a "deal" was reached. Deposition of Scott Suprina, pg 233, lines 18-24, Exhibit

16. Seating Solutions has no evidence that Maguire said anything to Worcester Baseball to cause it to "cancel" any perceived "deal". Deposition of Scott Suprina, pg 234, lines 15-18, Exhibit 1  Maguire never shared, with Worcester Baseball, his opinion regarding the quality of Seating Solutions' work or Suprina personally. Deposition of Ted Tye, pg 49, lines 11-22, pg 70, lines 9-12, Exhibit 2. Maguire did share his opinion of Seating Solutions proposals with Worcester Baseball. Deposition of Ted Tye, pg 49, lines 23-24, pg 50, line 1, Exhibit 2.

17. All of the advice given by Geller to Worcester Baseball was pursuant to its role as a consultant. Affidavit of Patrick Maguire, ¶4, Exhibit 7. Geller had a favorable experience with Dant Clayton so it urged Worcester Baseball to consider it. Deposition of Ted Tye, pg 102, lines 17-24, pg 103, lines 1-2, Exhibit 2. Geller acted as a consultant and it was paid to provide opinions, but Geller was not a decision maker. Deposition of Ted Tye, pg 187, lines 10-18, Exhibit 2. Maguire expressed "good professional opinions," which were objective and based upon the information that was put in front of him. Deposition of Ted Tye, pg 187, lines 10-18, Exhibit 2. Whether Maguire liked Suprina was "completely irrelevant" and not part of any consideration. Deposition of Ted Tye, pg 188, lines 1-5, Exhibit 2. Ultimately Worcester Baseball made the decision regarding what contractor to hire. Deposition of Ted Tye, pg 103, lines 3-11, Exhibit 2.

18. The drawings ultimately produced by Seating Solutions were compilations of drawings from different parties and were worked on by employees of Seating Solutions and employees of Geller. Affidavit of Patrick Maguire, ¶6, Exhibit 7. Originally an

architectural firm called Sink Combs Dethleff developed a basic plan for the site. Deposition of Ted Tye, pg 106, lines 3-17, Exhibit 2. The Sink Combs Dethleff plan was then given to Geller who created its own version of the plan. Deposition of Ted Tye, pg 106, lines 3-17, Exhibit 2. The Sink Combs Dethleff plan and the Geller plan were both given to Seating Solutions and Dant Clayton for their use. Deposition of Ted Tye, pg 106, lines 3-17, Exhibit 2.

19. Seating Solutions scanned drawings received from Tye into its computer to use it as a basis for its seating proposal. Deposition of Scott Suprina, pg 244, lines 1-19, Exhibit 1 These initial drawings showed the elevations of the land, a baseball diamond, players benches, and old bleachers. Deposition of Scott Suprina, pg 295, lines 22-24, pg 296, lines 1-11, pg 297, lines 1-24, Exhibit 1. The layout of Fitton Field required a certain structural design and there were limited ways the seating could be installed. Affidavit of Patrick Maguire, ¶7, Exhibit 7.

20. Seating Solutions does not claim it has a copyright in its drawings of the Project. Deposition of Scott Suprina, pg 246, lines 21-22, Exhibit 1  Seating Solutions has not registered its drawings of the Project for copyright protection. Deposition of Scott Suprina, pg 246, lines 23-24, pg 247, lines 1-2, Exhibit 1.

21. Seating Solutions claims that its drawings were not allowed to be shared with third-parties because it included a "title-block" on its plans. Deposition of Scott Suprina, pg 251, lines 4-6, Exhibit 1

22. The text of the "title-block" reads as follows: "Notice: Seating Solutions claims proprietary rights in the information disclosed on this drawing. It is issued in confidence for engineering information only and may not be used in whole or in part to manufacture

anything whether or not shown herein reproduced or disclosed to anyone without direct written permission from Seating Solutions." Seating Solutions plans, Exhibit 6.

23. The information provided by Seating Solutions on the drawings was not used in whole or in part to manufacture anything. Affidavit of Patrick Maguire, ¶8, Exhibit 7.

24. Seating Solutions sent the plans to Geller for its use on the Project. Affidavit of Patrick Maguire, ¶5, Exhibit 7. Seating Solutions did not verbally inform Geller that Geller was not allowed to share these plans with other parties. Deposition of Scott Suprina, pg 251, lines 7-12, Exhibit 1. When Seating Solutions sent the drawings to Geller, Seating Solutions did not have Geller sign a nondisclosure agreement. Deposition of Scott Suprina, pg 254, lines 7-10, Exhibit 1   Seating Solutions did not have a confidentiality agreement with Geller. Deposition of Scott Suprina, pg 258, lines 18-22, Exhibit 1.

25. Tye directed Geller to contact Dant Clayton at various points to see if they were interested in bidding on the Project. Deposition of Ted Tye, pg 124, lines 8-16, Exhibit 2. Worcester Baseball ultimately entered into a contract with Dant Clayton to build and install the seating for the Project. Deposition of Ted Tye, pg 192, lines 14-16, Exhibit 2. From the first meetings with both Dant Clayton and Seating Solutions, Worcester Baseball's independent opinion was that it was very impressed with Dant Clayton's proposal and organization and wanted to work with it. Deposition of Ted Tye, pg 188, lines 17-24, pg 189, lines 1-5, Exhibit 2.

                                      Respectfully submitted,

                                      GELLER SPORT, INC. and GELLER DEVELLIS, INC.
By their attorneys,

/s/ *signature*

David J. Hatem PC, BBO #225700
Warren D. Hutchison, BBO # 246150
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500
Date:                                (617) 406-4501

## **CERTIFICATE OF SERVICE**

I, Warren D. Hutchison, certify that on this 7th day of October, 2005, I served the foregoing by mailing a copy first class, postage prepaid, to:

| | |
|---|---|
| Terry Klein, Esq. | Louis M. Ciavarra, Esq. |
| The Law Office of Terry Klein | Bowditch & Dewey |
| 1558 Dorchester Avenue, Suite 202 | One International Place |
| Dorchester, MA 02122 | Boston, MA 02110 |

                                                                         /s/ *signature*
                                                                         Warren D. Hutchison