UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RI, Inc. d/b/a SEATING SOLUTIONS, <br><br> Plaintiff, <br><br> v. <br><br> GELLER SPORT, INC., GELLER DEVELLIS, INC., WORCESTER PROFESSIONAL BASEBALL LLC, and PERFECT GAME BASEBALL CLUBS, LLC, <br><br> Defendants. | CIVIL ACTION <br> NO. 05-CV-10365-JLT |

**MEMORANDUM OF LAW OF THE DEFENDANTS
GELLER SPORT, INC. AND GELLER DEVELLIS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The defendants, Geller Sport, Inc. and Geller DeVellis, Inc. ("Geller"), submit this memorandum of law in support of their motion for summary judgment as to all claims asserted against them by the plaintiff, RI, Inc. d/b/a Seating Solutions ("Seating Solutions").

Summary Judgment should be granted in Geller's favor because the facts are undisputed that: (1) Geller did not intentionally and maliciously interfere with any relationship between Seating Solutions and Worcester Baseball; (2) no confidentiality agreement was entered into by Geller and Seating Solutions that would create grounds for recovery; (3) Geller did not misappropriate any trade secrets of Seating Solutions; (4) Geller did not intentionally exercise wrongful ownership, control or dominion over any property of Seating Solutions; and (5) Geller did not perform any unfair or deceptive acts that would warrant a violation of M.G.L. ch. 93A.

1

I.  **STATEMENT OF UNDISPUTED FACTS**[1]

The plaintiff, RI, Inc. d/b/a Seating Solutions ("Seating Solutions"), is a company involved in the seating system design and construction industry that specializes in the sale, rental, and installation of custom-designed spectator seating at athletic and recreational facilities. [Facts, ¶1]. Scott Suprina ("Suprina") operates as the Chief Executive Officer for Seating Solutions. [Facts, ¶1].

Worcester Professional Baseball, LLC ("Worcester Baseball"), is the owner and operator of the Worcester Tornadoes, a professional baseball franchise that is a member of the Canadian American Association of Professional Baseball, which began playing in the Spring of 2005. [Facts, ¶2]. Worcester Baseball was engaged in efforts to secure a location for its Baseball team to play ("the Project"). [Facts, ¶2]. Alan Stone ("Stone") is the president and chief executive officer for Worcester Baseball. [Facts, ¶3]. Stone is authorized to make decisions, enter into contracts, and hire and fire staff. [Facts, ¶3] Stone is the only person who signs contracts for Worcester Baseball. [Facts, ¶3]. Ted Tye ("Tye") is the Chairman of the Board of Directors for Worcester Baseball. [Facts, ¶3].

Geller provides recreation and athletic facility design consulting services. [Facts, ¶4]. Geller was hired by Worcester Baseball to act as a consultant to Worcester Baseball for the Project. [Facts, ¶4]. As a consultant, Geller's roles were to assist Worcester Baseball in evaluating different locations for the baseball park, to provide master planning for the park, to provide the ultimate engineering plans and site plans for the selected location, and to assist in evaluating firms for the seating installation on the Project. [Facts, ¶4]. Worcester Baseball's primary contact at Geller, for the Project, was Patrick Maguire ("Maguire"). [Facts, ¶4].

---

[1] The undisputed facts are set forth in the accompanying Statement of Undisputed Material Facts; they are summarized here for the court's convenience.

Beginning in or around December 2004, Seating Solutions began having discussions with Worcester Baseball regarding a potential contract to design, sell, and install seats at Fitton Field, located on the campus of Holy Cross, as part of the Project. [Facts, ¶5]. In connection with these ongoing discussions, Seating Solutions submitted to Worcester Baseball a proposal and some preliminary drawings and design work. [Facts, ¶6]. The initial proposal was rejected by Worcester Baseball. [Facts, ¶6]. A second revised proposal by Seating Solutions was submitted on or about February 15, 2002, and similarly was rejected. [Facts, ¶7] A third revised proposal by Seating Solutions was submitted to Worcester Baseball on or about February 7, 2005, which was rejected and never signed by Worcester Baseball [Facts, ¶8]

A fourth revised proposal by Seating Solutions was submitted to Worcester Baseball on or about February 21, 2005, and was also rejected. [Facts, ¶9]. The February 21, 2005 revised proposal was never signed by anyone. [Facts, ¶9]. The February 21, 2005 revised proposal required a signature by Worcester Baseball and deposit by February 22, 2005 to lock in the pricing and terms of the agreement. [Facts, ¶10, Exhibit 8]. Seating Solutions never received a deposit by February 22, 2005. [Facts, ¶10]. The effect of Seating Solutions not having a signed proposal and not having the deposit is that the price or the terms of the contract could change at Seating Solutions discretion. [Facts, ¶10].

Seating Solutions sent a final revised proposal to Worcester Baseball on February 22, 2005. [Facts, ¶11]. The February 22, 2005 proposal was never signed by Worcester Baseball. [Facts, ¶11]. Eventually Worcester Baseball accepted a proposal from another contractor, Dant Clayton Corporation ("Dant Clayton"). [Facts, ¶12]

Worcester Baseball denies that a contract existed between it and Seating Solutions. [Facts, ¶13]. Worcester Baseball never orally agreed to a contract with Seating Solutions on

3

February 18, 2005, as Seating Solutions claims. [Facts, ¶13]. Tye did not tell Suprina on February 18, 2005 that they had a "deal" or an "order." [Facts, ¶13]. Suprina knew that any contract executed by Worcester Baseball would have to be signed by Stone. [Facts, ¶13].

No materials were ever shipped to Seating Solutions from its seating manufacturer, Outdoor Aluminum, for this Project. [Facts, ¶14]. Seating Solutions never paid any money to Outdoor Aluminum for this Project. [Facts, ¶14].

Maguire was not at the February 18, 2005 meeting where Seating Solutions claims a "deal" was reached. [Facts, ¶15]. Seating Solutions has no evidence that Maguire said anything to Worcester Baseball to cause it to "cancel" any perceived "deal". [Facts, ¶16]. Maguire never shared, with Worcester Baseball, his opinion regarding the quality of Seating Solutions' work or Suprina personally. [Facts, ¶16]. Maguire did share his opinion of Seating Solutions proposals with Worcester Baseball. [Facts, ¶16].

All of the advice given by Geller to Worcester Baseball was pursuant to its role as a consultant. [Facts, ¶17]. Geller had a favorable experience with Dant Clayton so it urged Worcester Baseball to consider it. [Facts, ¶17]. Geller acted as a consultant and it was paid to provide opinions, but Geller was not a decision maker. [Facts, ¶17]. Maguire expressed "good professional opinions," which were objective and based upon the information that was put in front of him. [Facts, ¶17]. Whether Maguire liked Suprina was "completely irrelevant" and not part of any consideration. [Facts, ¶17] Ultimately Worcester Baseball made the decision regarding what contractor to hire. [Facts, ¶17].

The drawings ultimately produced by Seating Solutions were compilations of drawings from a couple of different parties and were worked on by employees of Seating Solutions and employees of Geller. [Facts, ¶18]. Originally an architectural firm called Sink Combs Dethleff

developed a basic plan for the site. [Facts, ¶18] The Sink Combs Dethleff plan was then given to Geller who created its own version of the plan. [Facts, ¶18]. The Sink Combs Dethleff plan and the Geller plan were both given to Seating Solutions and Dant Clayton for their use. [Facts, ¶18].

Seating Solutions scanned drawings received from Tye into its computer to use it as a basis for its seating proposal. [Facts, ¶19]. These initial drawings showed the elevations of the land, a baseball diamond, players benches, and old bleachers. [Facts, ¶19]. The layout of Fitton Field required a certain structural design and there were limited ways the seating could be installed. [Facts, ¶19]

Seating Solutions does not claim it has a copyright in its drawings of the Project. [Facts, ¶20]. Seating Solutions has not registered its drawings of the Project for copyright protection. [[Facts, ¶20]. The text of the "title-block" reads as follows: "Notice: Seating Solutions claims proprietary rights in the information disclosed on this drawing. It is issued in confidence for engineering information only and may not be used in whole or in part to manufacture anything whether or not shown herein reproduced or disclosed to anyone without direct written permission from Seating Solutions." [Facts, ¶22].

The information provided by Seating Solutions on the drawings was not used in whole or in part to manufacture anything. [Facts, ¶23]. Seating Solutions sent the plans to Geller for its use on the Project. [Facts, ¶24]. Seating Solutions did not verbally inform Geller that Geller was not allowed to share these plans with other parties. [Facts, ¶24]. When Seating Solutions sent the drawings to Geller, Seating Solutions did not have Geller sign a nondisclosure agreement. [Facts, ¶24]. Seating Solutions did not have a confidentiality agreement with Geller. [Facts, ¶24].

Tye directed Geller to contact Dant Clayton at various points to see if they were interested in bidding on the Project. [Facts, ¶25]. Worcester Baseball ultimately entered into a contract with Dant Clayton to build and install the seating for the Project. [Facts, ¶25]. From the first meetings with both Dant Clayton and Seating Solutions, Worcester Baseball's independent opinion was that it was very impressed with Dant Clayton's proposal and organization and wanted to work with it. [Facts, ¶25].

## II.   ARGUMENT

### A.   THE STANDARD OF REVIEW

This Court must order summary judgment to be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986); Villanueva v. Wellesley Coll., 930 F.2d 124, 127 (1st Cir.), cert. denied, 502 U.S. 861 (1991); Desmond v. Federal Deposit Ins. Corp., 798 F. Supp. 829 (D. Mass. 1992). To avoid summary judgment, a dispute over a material fact must be genuine. An issue is genuine if evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); McConnell v. Texaco, Inc., 727 F. Supp. 751, 755 (D. Mass. 1990).

Opposing parties will not successfully avoid summary judgment when they merely raise "vague and general allegations of expected proof." Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The non-moving party's failure to prove an essential element of its case "renders all other facts immaterial" and mandates summary judgment in favor of the moving

party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).

The plaintiff must present the requisite quantum of evidence to enable it to reach the jury with its claim and cannot rest upon mere allegations. Kourouvacilis v. General Motors Corporation, 410 Mass. 706, 710-711 (1991); Dexter's Hearthside Restaurant, Inc. v. Whitehall, 24 Mass. App. Ct. 217, 223 (1987).

Summary judgment is appropriate in this matter as there are no genuine issues of material fact in dispute and, therefore, Geller is entitled to judgment as a matter of law on all counts alleged by Seating Solutions.

**B.    GELLER IS ENTITLED TO SUMMARY JUDGMENT ON SEATING SOLUTIONS' CLAIM OF TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATION BECAUSE GELLER DID NOT INTENTIONALLY AND MALICIOUSLY INTERFERE WITH THIS RELATIONSHIP.**

To prove tortious interference with advantageous relations, Seating Solutions must show that: (1) a business relationship or contemplated contract of economic benefit existed; (2) the defendant's knowledge of such relationship; (3) the defendant's intentional and "malicious" (or improper) interference with it; and (4) his loss of advantage directly resulting from the defendant's conduct. Comey v. Hill, 387 Mass. 1, 19, 438 N.E.2d 811, 816 (1982); Powers v. Leno, 24 Mass.App.Ct. 381, 385, 509 N.E.2d 46, 49 (1987); Devlin v. WSI Corp., 833 F.Supp. 68, 78 (D.Mass.1993) (applying Mass. law).

Malice is an essential element of the tort interference with an advantageous relationship. Owen v. Williams, 322 Mass. 356, 360, 77 N.E.2d 318, 320 (1948). Seating Solutions must prove that Geller employed improper motive or means which has been defined by the Supreme Judicial Court in Massachusetts as "actual malice." Harrison v. NetCentric Corp., 433 Mass. 465, 744 N.E.2d 622 (2001); See also Bennett v. City of Holyoke, 230 F.Supp.2d 207

(D.Mass.2002), aff'd 362 F.3d (1st Cir.2004) (applying Mass. law). Actual malice is defined as any "spiteful, malignant purpose, unrelated to the legitimate corporate interest." Shea v. Emmanuel College, 425 Mass. 761, 682 N.E.2d 1348 (1997) (summary judgment was property granted for defendant since he produced unrebutted evidence justifying plaintiff's discharge and she produced no evidence that defendant had spiteful, malignant purpose in discharging her). Seating Solutions is unable to meet this burden of proof.

Seating Solutions has no evidence that will support the necessary claim that Geller acted with actual malice or with an improper motive. Geller was a consultant but did not have the decision making powers. [Facts, ¶17]. Geller expressed "good professional opinions", which were objective and based upon the information provided. [Facts, ¶17].

Further, Seating Solutions has no evidence that Geller said anything to Worcester Baseball to alter its relationship with Seating Solutions. [Facts, ¶16]. Geller never shared its opinion regarding the quality of the Seating Solutions work or of Suprina personally to Worcester Baseball. [Facts, ¶16]. Although not even existing here, personal dislike will not meet the malice requirement for this tort. See King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488, 494-495 (1994) (citing Boothby v Texan, Inc., 414 Mass. 468, 487, 608 N.E.2d 1028,1040 (1993). Similarly, derogatory comments and uncivil behavior will not warrant the inference that the defendant acted with malice. See Alba v. Sampson, 44 Mass.App.Ct. 311, 316, 690 N.E.2d 1240, 1244 (1998).

All of the advice proffered by Geller was pursuant to its role as a consultant. [Facts, ¶17]. In United Truck Leasing Corp. v. Geltman, the Supreme Judicial Court held that a consultant who had advised a client not to do business with the plaintiff firm, and who acted only out of economic self-interest, did not employ improper means nor have an improper motive and

8

so was not liable when the client, acting on the consultant's advice, ceased to do business with the plaintiff. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 817, 551 N.E.2d 20, 24 (1990). In a subsequent decision discussing the holding of United Truck Leasing Corp., the Supreme Judicial Court held in King v. Driscoll that, "[t]he motivation of personal gain, including financial gain, however, generally is not enough to satisfy the improper interference requirement." King v. Driscoll, 418 Mass. 576, 587, 638 N.E.2d 488, 495 (1994). Here, Geller did not advise Worcester Baseball "not" to do business with Seating Solutions, nor were the opinions given by Geller motivated by financial gains. [Facts, ¶4].

Most importantly, Worcester Baseball has stated that it was the sole decision maker, not Geller. [Facts, ¶17]. Worcester Baseball made the decision not to hire Seating Solutions. Seating Solutions loss of the Project cannot be attributed to any actions by Geller as Geller had no power to make these kind of decisions. Seating Solutions has no evidence that Worcester Baseball's decision not to hire it would have been any different without Geller's limited involvement.

Therefore, Seating Solutions is unable to prove essential elements of this claim. First, Seating Solutions cannot prove that Geller suggested to Worcester Baseball not to hire Seating Solutions. Second, Seating Solutions cannot prove that Geller acted with malice or an improper motive when advising Worcester Baseball on the contractors. Third, Seating Solutions is unable to prove that Worcester Baseball's decision would have been any different without Geller's limited involvement. Geller requests summary judgment on Seating Solutions claim of interference with an advantageous business relation.

C.   **GELLER IS ENTITLED TO SUMMARY JUDGMENT ON THE SEATING SOLUTIONS' CLAIM OF BREACH OF CONFIDENTIALITY AGREEMENT BECAUSE NO AGREEMENT WAS ENTERED INTO BY THE PARTIES.**

To succeed on its claim for breach of a confidentiality agreement, Seating Solutions must first prove a valid confidentiality agreement existed. Seating Solutions must prove that the parties had a meeting of the minds, that they agreed to do or not to do a specific thing. See Restatement, 2d, Contracts, §17, Comment c. The issue of whether a purported contract meets the meeting of the minds standard is a determination for the court and not the jury. Geo W. Wilcox, Inc. v. Shell Eastern Petroleum Products, Inc. 238 Mass. 383, 186 N.E. 562 (1933). To be enforceable, an agreement must be sufficiently definite and certain so that the intentions and obligations of the parties may be discovered. Cygan v. Megathlin, 362 Mass. 732, 733-734, 96 N.E.2d 702, 703 (1951); See Read v. McKeague, 252 Mass. 162, 164, 147 N.E. 585, 586 (1925) ("The court cannot make for the parties a contract which they did not make for themselves."). Seating Solutions claims that the drawings were not allowed to be shared with third-parties because it included a "title-block" on its plans. [Facts, ¶21].

Seating Solutions did not verbally inform Geller that it was not allowed to share the plans with other parties. [Facts, ¶24]. When Seating Solutions sent the plans to Geller it did not have Geller sign any agreement. [Facts, ¶24]. The only writing Seating Solutions relies on is the "title-block" which was inserted on the drawings. [Facts, ¶24]. The insertion of this boiler plate language cannot be considered a meeting of the minds. The "title-block" is not definitive as to the obligations and rights of the parties. [Facts, ¶22]. The "title-block" does not explain how acceptance of this contract occurs. [Facts, ¶22]. The "title-block" does not explain what must be kept confidential and what the penalties would be if Geller violated it. [Facts, ¶22]. With all of

10

these uncertainties, Seating Solutions will be unable to prove that Seating Solutions and Geller had a meeting of the minds regarding the "title-block."

A contract must be supported by consideration to be valid and legally enforceable. Old Colony Trust Co. v. Commissioner of Corporations and Taxation, 346 Mass. 667, 671, 195 N.E.2d 332, 335 (1964). There should either be a benefit to the promisor or a detriment to the promisee. Graphic Arts Finishers, Inc. v. Boston Redevelopment Authority, 357 Mass. 40, 255 N.E.2d 793 (1970); Torrey v. Adams, 254 Mass. 22, 149 N.E. 618 (1925). There was no valid consideration exchanged for this alleged contract. Geller received no benefit by using the drawings. Geller was working with these drawings in its capacity as consultant to Worcester Baseball.

Also, the information provided by Seating Solutions on the drawings was not used in whole or in part to manufacture anything. [Facts, ¶23]. Therefore, Seating Solutions is unable to prove any violation of the "terms" of the title block statement.

Finally, Scott Suprina had admitted, when asked whether Seating Solutions had a confidentiality agreement with Geller, that the answer was "no". [Facts, ¶24]. The party claiming the protection of a confidentiality agreement admitted none existed. As no confidentiality agreement existed, Seating Solutions has no actionable claim against Geller.

D.   **GELLER IS ENTITLED TO SUMMARY JUDGMENT ON THE SEATING SOLUTIONS' CLAIM OF MISAPPROPRIATION OF TRADE SECRETS BECAUSE SEATING SOLUTIONS DOES NOT POSSES ANY TRADE SECRET THAT GELLER MISAPPROPRIATED.**

Misappropriation of trade secrets is based on a breach of the duty not to disclose or to make unauthorized use of trade secrets or confidential information. Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 165, 385 N.E.2d 1349, 1354 (1979). A trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives

him an opportunity to obtain an advantage over competitors who do not know or use it." <u>J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.</u>, 357 Mass. 728, 736, 260 N.E.2d 723, 729 (1970) (quoting Restatement of Torts § 757 cmt. B (1939); See also <u>Eastern Marble Prods Corp. v. Roman Marble, Inc.</u>, 372 Mass. 835, 838-39, 364 N.E.2d 799, 801-802 (1977). Seating Solutions does not posses a valid trade secret in its seating design.

Massachusetts courts examine these six factors in determining whether particular information constitutes a trade secret: (1) the extent to which the information is known outside the plaintiff's business; (2) the extent to which the information is known by employees and others involved in the plaintiff's business; (3) the extent of measures taken by the plaintiff to guard the secrecy of the information; (4) the value of the information to the plaintiff and to its competitors; (5) the amount of effort or money expended by the plaintiff in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. <u>Jet Spray Cooler, Inc. v. Crampton</u>, 361 Mass. 835, 840, 282 N.E.2d 921, 925 (1972) (citing Restatement of Torts ¶ 757 cmt. b); <u>Matter of Yankee Milk Inc.</u>, 372 Mass. 353, 360, 362 N.E.2d 207, 211 (1977); <u>Campbell Soup Co.</u> v. Giles, 47 F.3d 467, 469-470 (1st Cir.1995) (denial of motion for preliminary injunction regarding misappropriation of trade secrets affirmed; lower court found that marketing information at issue was no longer confidential, having been disclosed to customers and the public).

There is nothing secret about Seating Solutions designs for the Project. The information of its seating components and designs can be ascertained by visiting other stadiums where it has worked. Further, Seating Solutions ideas for the Project were based on original drawings by Sink Combs Dethleff and drawings by Geller. [Facts, ¶18]. Seating Solutions drawings were actually compilations of drawings from different parties and were worked on by employees of

12

Seating Solutions and employees of Geller. [Facts, ¶18]. By virtue of Seating Solutions adding the "title-block" and its logo to plans, it does not automatically turn the plans into its sole proprietary information. The information contained in these drawings could very easily be duplicated by others, as the layout of the Fitton Field required a certain structural design and limited the ways in which seating could be installed. [Facts, ¶19]. By application of the above factors the information contained in Seating Solutions plans are not trade secrets.

A case of wrongful misappropriation of trade secret involves "the breach of the duty not to disclose or to use without permission confidential information acquired from another." Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 165, 385 N.E.2d 1349, 1354 (1979). Seating Solutions must establish three elements: (1) that Seating Solutions possesses a trade secret; (2) that Seating Solutions took reasonable steps to preserve the secrecy of the trade secret; and (3) that Geller breached the duty not to disclose or to use the trade secret. Peggy Lawton Kitchens, Inc. v. Hogan, 18 Mass.App.Ct. 937, 939, 466 N.E.2d 138, 139-140 (1984); J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc., 357 Mass. 728, 260 N.E.2d 723 (1970). Seating Solutions bears the burden of proving that Geller misappropriated and wrongfully used Seating Solutions' trade secret. USM Corp. v. Marson Fastener Corp., 392 Mass. 334, 352 n. 17, 467 N.E.2d 127 1284 n. 17 (1984).

As stated above, Seating Solutions does not possess a trade secret in the plans for the Project. Equally important is the fact that Geller did not breach a duty not to disclose or use the trade secret. There was no confidentiality agreement entered into by Geller and Seating Solutions. Seating Solutions was a contractor in negotiations with Worcester Baseball. As part of those negotiations, it provided Worcester Baseball's consultant the plans that were being developed for the seating. Geller was under no duty to keep these plans confidential as they

were not the sole property of Seating Solutions. Further, the "title-block" does import an affirmative duty on Geller with regard to the plans. When Geller incorporated a proposed seating arrangement on the master plans to mail to other parties, Geller did not imply that it had designed the seating arrangement. Seating Solutions suffered no damage from Geller's incorporation of the seating arrangement into the master plans.

Seating Solutions is unable to meet its burden on this claim to prove it had a valid trade secret and that Geller misappropriated it, therefore Geller requests summary judgment on this count.

### E.    GELLER IS ENTITLED TO SUMMARY JUDGMENT ON THE SEATING SOLUTIONS' CLAIM OF CONVERSION BECAUSE GELLER DID NOT INTENTIONALLY EXERCISE WRONGFUL OWNERSHIP, CONTROL OR DOMINION OVER ANY PROPERTY OF SEATING SOLUTIONS.

The tort of conversion involves the intentional and wrongful exercise of acts of ownership, control or dominion over personalty. See e.g., Third National Bank of Hampden County v. Continental Ins. Co., 388 Mass. 240, 244 (1983). To succeed on a claim for conversion, Seating Solutions must prove that Geller has (1) intentionally or wrongfully exercised acts of ownership, control or dominion (2) over personal property (3) to which it had no right of possession at the time. Grand Pacific Finance Corp. v. Brauer, 57 Mass.App.Ct. 407, 783 N.E.2d 849 (2003) (law firm and attorney were liable for conversion of funds where funds placed in its escrow account for use in a settlement, where after the settlement fell apart the law firm refused to return the funds).

Geller was lawfully in possession of the plans. [Facts, ¶24]. Seating Solutions sent the plans to Geller for its use on the Project. [Facts, ¶24]. Therefore, Geller had a right to posses of the plans. Geller never claimed it designed the seating for the project. Further, Geller did not

intentionally or wrongfully exercise ownership, control or dominion over the plans and Seating Solutions is unable to prove otherwise.

Seating Solutions must show that at the time of the conversion, it had a general or special property right in the goods and that it had either the actual possession or the right to immediate possession of them. Massachusetts Lubricant Corp. v. Socony-Vacuum Oil Co., 305 Mass. 269, 25 N.E.2d 719 (1940). Further, Seating Solutions must prove that acts of Geller imply an assertion of title or right of dominion, such as a sale, letter, or a destruction of the property. Spooner v. Manchester, 133 Mass. 270 (1882); McPartland v. Read, 93 Mass. (11 Allen) 231 (1865). If Seating Solutions is unable to prove that Geller acted in this way Seating Solutions may show that Geller performed with the intent of depriving the owner of the property of it permanently or temporarily. Spooner v. Manchester, 133 Mass. 270 (1882); Atlantic Finance Corp. v. Galvam, 311 Mass. 49, 39 N.E.2d 951 (1942). As stated above, Geller rightfully came into possession of the drawings and did nothing with the intent of depriving Seating Solutions of any of its property.

An independent basis for Summary Judgment on this count exists because Seating Solutions has not suffered any damages. The ordinary rule in an action for conversion is that the measure of damages is the fair market value of the goods at the time of the conversion. Joy Stevens of California v. Plymouth Finishing Co., 355 Mass. 390, 245 N.E.2d 236 (1969); See Welsch v. Palumbo, 321 Mass. 399, 73 N.E.2d 844 (1947); See also Clapp v. Haynes, 11 Mass.App.Ct. 895, 414 N.E.2d 359 (1985). Seating Solutions is unable to prove that it suffered any damages from the alleged conversion.

15

F.  **GELLER IS ENTITLED TO SUMMARY JUDGMENT ON THE SEATING SOLUTIONS' CLAIM OF A VIOLATION OF M.G.L CH. 93A BECAUSE GELLER PERFORMED NO UNFAIR OR DECEPTIVE ACTS.**

The Massachusetts Consumer Protection Act is codified in Mass. Gen. L. ch. 93A. regulations promulgated by the Attorney General pursuant to Chapter 93A provide that a person or company may be found liable for an "unfair or deceptive act" under certain circumstances. 940 C.M.R. 3.16(2). Liability under Section 2 of Chapter 93A will attach only where the facts reveal conduct which is "'within any recognized conception of unfairness' or is 'immoral, unethical, oppressive or unscrupulous' or 'causes substantial injury to consumers.'" Glickman v. Brown, 21 Mass. App. Ct. 229, 234 (1985) rev. denied, 396 Mass. 1106 (1986) (quoting PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975)). The allegation of violation of Chapter 93A must fall "within at least the penumbra of some common law, statutory, or other established concept of unfairness." Glickman, 21 Mass. App. Ct. at 234, 235; see Compagnie de Reassurance D'ile de France v. New England Reinsurance Co., 825 F. Supp. 370, 381 (D. Mass. 1993).

The allegations by Seating Solutions fail to establish, as a matter of law, unfair or deceptive trade practices by Geller which would violate M.G.L. c. 93A. Geller acted as a consultant to Worcester Baseball. [Facts, ¶4]. Geller's advice to Worcester Baseball does not rise to the level of violation under Chapter 93A. See United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812, 551 N.E.2d 20, 21 (1990). Geller's opinion of Seating Solutions' proposals is not conduct which is "immoral, unethical, oppressive or unscrupulous or causes substantial injury to consumers." Glickman v. Brown, 21 Mass.App.Ct. 229, 234 (1985) rev. denied, 396 Mass. 1106 (1986) (quoting PMP Associates, Inc. v. Globe Newspaper Co., 366 Mass. 593, (1975)); Damon v. Sun Co., Inc., 87 F.3d 1467 (1st Cir. 1996); Anthony's Pier Four, Inc. v.

16

HMC Assoc., 411 Mass. 451 (1991). Geller was acting pursuant to its role as consultant to Worcester Baseball.

As stated above, all of the advice given by Geller was pursuant to its role as consultant. [Facts, ¶17]. Geller's opinions were professional and objective based on the information. [Facts, ¶17]. Seating Solutions is unable to prove that Geller committed any unfair or deceptive acts. Geller's actions were not immoral, unethical or unscrupulous. Geller advised its employer of its opinion of various contractors proposals, which it was hired to do, and nothing more.

Whether Geller committed unfair or deceptive acts is an appropriate issue for summary judgment. "[A]lthough whether a particular set of acts, in their factual setting is unfair or deceptive is a question of fact, Spence v. Boston Edison Co., 390 Mass. 604, 616 (1983), the boundaries of what may qualify for consideration as a c. 93A violation is a question of law." Schwanbeck f. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 414 (1991), modified 412 Mass. 703 (1992). The Supreme Judicial Court has held that it is the plaintiff's burden to establish the existence of an unfair and deceptive act. Underwood v. Risman, 414 Mass. 96 (1993). Seating Solutions is unable to meet its burden on this claim and therefore summary judgment should be granted in Geller's favor on this count.

## CONCLUSION

For the foregoing reasons, Geller respectfully request that this Court GRANT their Motion for Summary Judgment on all counts. Moreover, as there is no just reason for delay, Geller requests that this Court enter an Order directing the entry of separate and final judgment, dismissing Seating Solutions' claim against the defendants.

Respectfully submitted,<br>
GELLER SPORT, INC. and GELLER DEVELLIS, INC.<br>
By their attorneys,

_____
David J. Hatem PC, BBO #225700
Warren D. Hutchison, BBO # 246150
DONOVAN HATEM LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500
(617) 406-4501

Date:

## CERTIFICATE OF SERVICE

I, Warren D. Hutchison, certify that on this 7th day of October, 2005, I served the foregoing by mailing a copy first class, postage prepaid, to:

Terry Klein, Esq.
The Law Office of Terry Klein
1558 Dorchester Avenue, Suite 202
Dorchester, MA  02122

Louis M. Ciavarra, Esq.
Bowditch & Dewey
One International Place
Boston, MA 02110

_____
Warren D. Hutchison