UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RI, Inc. d/b/a SEATING SOLUTIONS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GELLER SPORT, INC., GELLER DEVELLIS, )<br>INC., WORCESTER PROFESSIONAL BASEBALL )<br>LLC, and PERFECT GAME BASEBALL CLUBS, LLC, )<br>)<br>Defendants. )<br>) | CIVIL ACTION<br>NO. 05-CV-10365-JLT |

### AFFIDAVIT OF SCOTT RUCZAJ

I, Scott Ruczaj, do hereby depose and swear as follows:

1. I am a design professional at Seating Solutions and I have personal knowledge of the facts stated in this affidavit.

2. I am the lead designer at Seating Solutions and I have two people who work on design of seating systems at my direction. I have a 2001 associate's degree in computer aided drafting and design from Briarcliffe College in Bethpage, New York. I have worked in the design department at Seating Solutions since 1999. I have used AutoCAD to design hundreds and possibly thousands of seating systems in locations across the United States.

3. The two other designers at Seating Solutions, Scott Suprina, and I are the only people who have access to AutoCAD designs prepared by Seating Solutions. Our files on the server at Seating Solutions are password-protected. Only the other two designers, Scott Suprina, and I have passwords that enable us to access these files. When we disclose AutoCAD drawings to third parties, we stamp them with a confidentiality notice. The notice states: "Notice: Seating Solutions claims proprietary rights in the information disclosed on this drawing. It is issued in confidence for engineering information only and may not be used in whole or in part to

manufacture anything whether or not shown herein reproduced or disclosed to anyone without direct written permission from Seating Solutions."

4. I assisted Scott Suprina with the design of a seating system for Fitton Field in Worcester, Massachusetts.

5. I worked for a number of days on putting together these designs.

6. In late January of 2005, I attended a meeting with Mr. Suprina, Ted Tye and others whose identities I cannot currently recall. The meeting was at Mr. Tye's office in Newton. At this meeting, we presented design ideas for Fitton Field to Mr. Tye. He also said that Mr. Suprina and I were "his guys," which I understand to mean that he would use Seating Solutions to design and install the seating areas at Fitton Field.

7. In late January or early February of 2005, At Mr. Tye's request, I electronically mailed designs in AutoCAD format to Geller Sport, which I understood was a consultant to Mr. Tye on the Fitton Field project. I sent other AutoCAD drawings to Geller via e-mail over the next few weeks. Every AutoCAD drawing that I sent to Geller included the Seating Solutions title and confidentiality blocks.

8. I never authorized Geller to disclose the AutoCAD drawings to any third party for any reason.

9. I have reviewed the electronic mail message dated February 3 from Tara Hurley to Matt Dougherty, whom I believe is employed by the Dant Clayton corporation. A copy of that message is attached as *Exhibit A*. That message depicts Fitton Field and includes an AutoCAD drawing of the seating area at Fitton Field. I have compared that drawing with other drawings of the Fitton Field seating system that I prepared. I have concluded based on that review that I prepared the drawing in the email and included standard title and confidentiality block information. Geller appears to have removed that title and confidentiality block information. I never authorized Geller to disclose my Fitton Field designs to Dant Clayton.

10. I have also reviewed the electronic mail message dated February 4 from Geller to someone named Chris Sankey. A copy of that message is attached as *Exhibit B*. That message

depicts Fitton Field and includes an AutoCAD drawing of the seating area at Fitton Field. I have compared that drawing with other drawings of the Fitton Field seating system that I prepared. I have concluded based on that review that I prepared the drawing in the email and included standard title and confidentiality block information. Geller appears to have removed that title and confidentiality block information. I never authorized Geller to disclose my Fitton Field designs to Chris Sankey.

11. Theses drawings were some of the original versions I had emailed to Geller with my title block that detailed the large custom rear walkway that ran along the back of the stand, all the way to the corner of right field. The drawing includes a staircase to grade, and a large custom stair case that exited the other side of the rear walkway. In the main body of the stand immediately behind home plate every plank length and the angle on each section of plank as well as the aisle sizing in the drawing match perfectly with mine.

12. On February 18, 2005, I attended another meeting with Mr. Tye, Patrick Maguire of Geller, Joe Gallagher, who I understood to be working with Mr. Tye, and Scott Suprina.

13. We initially met with Ted Tye to go over new drawings of the seating system that Mr. Suprina and I had prepared. After the meeting was over Mr. Suprina and I worked on revisions those drawings in a conference room for a few hours. Once the revisions were made Mr. Tye, Mr. Maguire, Mr. Gallagher, and some other people who I cannot recall joined us in the conference room to go over the changes.

14. Mr. Tye almost immediately started talking about pricing. Mr. Tye told Mr. Suprina that he had been informed that we were "ripping him off." He said that knew everyone was trying to make money but that we were basically ripping him off. Mr. Suprina asked who was providing this information and Mr. Maguire immediately joined the conversation.

15. Mr. Maguire said that he had been researching pricing on bleachers and that our prices were ridiculous. Mr. Suprina asked Mr. Maguire if he based his assessment on net or gross seat count. Mr. Maguire said "net" then changed his mind and "gross." Mr. Suprina asked if Mr. Maguire had compared the Fitton Field seating system with high school bleacher pricing

and Mr. Maguire said that he had. Mr. Suprina told Mr. Maguire that high school bleachers are semi-closed 24 inch tread bench seats. Seating Solutions plan would have involved a fully closed welded deck with flip seats, which is entirely different.

16. Mr. Maguire appeared to be very upset by this. I saw his face redden. He said that he had "been shopping the drawings around and getting way cheaper prices." Mr. Suprina also was visibly upset. He told Mr. Tye how much time and effort we had worked on this project that Ted had told us we were "his guys", and that it was not fair that they would take drawings that are our property and shop them around. Mr. Tye tried to calm the situation down and the meeting ended.

17. I have reviewed the affidavit submitted by Patrick Maguire in this case and it contains significant inaccuracies. First, the Fitton Field drawings that I prepared are not based upon compilations of drawings prepared by Geller and others. I did all the drafting, all of the modifications, revisions that ever took place on the drawings that Seating Solutions generated. I did not base the design on drawings prepared by any third party. Geller did not draw any part of the stand. Scott Suprina and I decided the exact location and rotation of the seating. Geller personnel would look over the drawings and tell us what they wanted modified or what ideas they had, and I would go and make any changes. I have never seen a Geller version of a plan prepared by Sink Combs Dethleff.

18. Second, the assertion that there was a limited number of seating arrangements possible at Fitton Field is incorrect. There are numerous ways this stand could have been constructed and installed. The hill at the site could have been leveled for the installation of non-elevated stands. The seating system could have employed a traditional front walkway instead of a rear walkway. We could have pushed the entire field forward to allow for more seating. We could have located concession stands and player locker rooms underneath the stand. The possibilities, in short, are endless and limited only by the creativity of the people who do the design work.

Duly sworn under the pains and penalties of perjury:

_____
Scott Ruczaj
Dated October 26, 2005

## CERTIFICATE OF SERVICE

I, Terry Klein, hereby certify that on October 27, 2005, a true copy of the above document was served by first class mail upon counsel for each other party.

/s/      Terry Klein

### Tara Hurley

**From:** Rebecca Bachand
**Sent:** Thursday, February 03, 2005 6:36 PM
**To:** 'Matt Dougherty (mdougherty@DANTCLAYTON.COM)'
**Subject:** Worcester Baseball Field

Matt -

Pat Maguire asked me to send you the attached CAD files for the baseball field that we met on this week.   Please feel free to call if you have any questions or problems with the file.

Thank you - Rebecca

**Rebecca Bachand, RLA**
Associate
**Geller DeVellis Inc.**
29 Washington Street
Wellesley, MA 02481
vox: 781.237.4111 ext. 12
fax: 781.237.4144
www.gellerdevellis.com

**03049**

8/11/2005

# Tara Hurley

**From:** Zhong Ye
**Sent:** Friday, February 04, 2005 3:54 PM
**To:** 'CHRIS.SANKEY@MUSCO.COM'
**Cc:** Rebecca Bachand
**Subject:** WORCESTER BASEBALL field PDF file

Chris,

This is the baseball field plan. Let me if any problems.

Zhong Ye
Geller DeVellis Inc.
29 Washington St.
Wellesley MA 02481
p 781.237.4111 x 29
f 781.237.4144

02973

8/11/2005

