UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RI, Inc. d/b/a SEATING SOLUTIONS,<br><br>Plaintiff,<br><br>v.<br><br>GELLER SPORT, INC., GELLER DEVELLIS, INC., WORCESTER PROFESSIONAL BASEBALL LLC, and PERFECT GAME BASEBALL CLUBS, LLC,<br><br>Defendant. | CIVIL ACTION<br>NO. 05-CV-10365-JLT |

**PLAINTIFF'S CONCISE STATEMENT OF FACTS IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, RI, Inc. d/b/a Seating Solutions ("Plaintiff" or "Seating") responds to the numbered paragraphs contained in the statement of undisputed facts of Geller Sport, Inc. and Geller Devellis, Inc. ("Geller") as follows:

1. Plaintiff admits the allegations in this paragraph.

2. Plaintiff admits the allegations in this paragraph.

3. Plaintiff admits the allegations in this paragraph with the exception of the allegations in the third sentence. Plaintiff disputes the allegation that Alan Stone is the only individual authorized to sign contracts on behalf of Worcester Professional Baseball, LLC ("Worcester Baseball"). This is based solely Mr. Stone's deposition testimony. Worcester Baseball has not produced documents that would permit Plaintiff to test this assertion. Plaintiff further states that the fact that Mr. Stone is the only person authorized to <u>sign</u> contracts does not mean that he is the only person authorized to <u>enter into</u> contracts.

4. Plaintiff admits the allegations in this paragraph.

5. Plaintiff admits the allegations in this paragraph.

6.	Plaintiff admits the allegation in the first sentence of this paragraph. Plaintiff denies that Worcester Baseball ever rejected any proposal that it submitted and states that the cited portion of the amended complaint does not support Geller's contention. Seating and Worcester Baseball discussed a series of proposals that ultimately resulted in an oral agreement. Deposition of Scott Suprina, dated July 29, 2005 ("Suprina Depo."), 24:7-23; 97:9-18; 106:2-108:24, a true copy of which is attached to the Affidavit of Terry Klein, dated October 27, 2005 ("Klein Aff.") at *Exhibit 1*.

7.	Plaintiff admits this it sent a document titled "proposal" to Worcester Baseball on or about February 15, 2005. Plaintiff denies that Worcester Baseball ever rejected any proposal that it submitted and states that the cited portion of the amended complaint does not support Geller's contention. Seating and Worcester Baseball discussed a series of proposals that ultimately resulted in an oral agreement. Klein Aff., Ex. 1 (Suprina Depo., 24:7-23; 97:9-18; 106:2-108:24).

8.	Plaintiff admits that it sent a document titled "proposal" to Worcester Baseball on or about February 17, 2005. Plaintiff denies that Worcester Baseball ever rejected any proposal that it submitted. Seating and Worcester Baseball discussed a series of proposals that ultimately resulted in the parties entering into an oral agreement. Klein Aff., Ex. 1 (Suprina Depo., 24:7-23; 97:9-18; 106:2-108:24).

9.	Plaintiff admits that it sent a document titled "proposal" to Worcester Baseball on or about February 21, 2005, and that this document memorialized the terms of the agreement had been reached on Friday, February 18, 2005. Klein Aff, Ex. 1 (Suprina Depo., 118:19-19:11). Plaintiff denies that Worcester Baseball ever rejected any proposal that it submitted. During the week of February 21, 2005, Worcester Baseball informed Seating that it would not perform its obligations under the contract into which it had entered with Seating Solutions. Klein Aff., Ex. 1 (Suprina Depo., 167:5-168:6). Plaintiff admits that the February 21, 2005 document was not signed by anyone.

10. Plaintiff states that the first sentence of paragraph constitutes a legal conclusion to which no response is required. Plaintiff admits the second sentence of this paragraph. Plaintiff disputes the third sentence of paragraph 10. Counsel asked Scott Suprina to interpret the legal significance of language in one of the documents that Plaintiff sent to Worcester Baseball. Klein Aff., Ex. 1 (Suprina Depo., 128:14-130:16). Suprina, however, believed that "[t]he deal wasn't changing" and that the deposit was not important because Worcester Baseball was in the middle of what they considered to be a problematic situation. Klein Aff. Ex. 1 (Suprina Depo., 161:15-162:2).

11. Plaintiff admits that it sent a document titled "proposal" to Worcester Baseball on or about February 22, 2005, and that this document memorialized the terms of the agreement had been reached on Friday, February 18, 2005. Klein Aff, Ex. 1 (Suprina Depo., 157:3-15). Plaintiff denies that Worcester Baseball ever rejected any proposal that it submitted. During the week of February 22, 2005, Worcester Baseball informed Seating that it would not perform its obligations under the contract into which it had entered with Seating Solutions. Klein Aff., Ex. 1 (Suprina Depo., 167:5-168:6). Plaintiff admits that the February 22, 2005 document was not signed by anyone.

12. Plaintiff admits the allegations in this paragraph and states that Worcester Baseball accepted the proposal of Dant Clayton as a direct and proximate result of the tortious interference, breach of contract, misappropriation, and conversion of Geller. Additionally, plaintiff states that in presenting its competing proposal, Dant Clayton relied on information contained in the drawings that Geller misappropriated from Seating Solutions. Deposition of Theodore Tye, dated August 24, 2005 ("Tye Depo."), 122:10-123:20 & Ex. 15, a true copy of which is attached in pertinent part to the Klein Aff at *Exhibit 2*. Dant Clayton's contract price was ultimately higher than the price to which Worcester Baseball had agreed with Seating Solutions. Klein Aff., Ex. 2 (Tye Depo., 193:1-10).

13. Plaintiff disputes the allegations in this paragraph. Seating and Worcester Baseball discussed a series of proposals that ultimately resulted in an oral agreement. Klein Aff.,

Ex. 1 (Suprina Depo., 24:7-23; 97:9-18; 106:2-108:24).  Worcester Baseball orally agreed to a contract with Seating Solutions on February 18, 2005.  *See id.*  Theodore Tye told Scott Suprina that they had a deal and that Seating had an order.  *See id.*  The parties agreed upon a contract price of $1,519,880.90.  Klein Aff., Ex. 1 (Suprina Depo., 200:2-11); Affidavit of Warren D. Hutchison, dated October 4, 2005 ("Hutchison Aff."), Ex. 4.  At this contract price, Seating Solutions would have realized a profit of almost $600,000.00.  Affidavit of Scott Suprina, dated May 20, 2005, ¶ 12.  Worcester Baseball also appears to have believed it had a contract with Plaintiff because when it decided to drop Seating Solutions and hire Dant Clayton, Ted Tye wrote that he was "going to attempt to switch suppliers." Klein Aff., Ex. 2 (Tye Depo., 168:17-169:15; Ex. 14; 172:12-173:15; Ex. 26).  Plaintiff disputes the allegation that Mr. Suprina knew that "any contract signed by Worcester Baseball would have to be signed by Alan Stone."  The quoted testimony states "I believe I was told that the contract would be executed by [Alan Stone], yes."  Klein Aff. Ex. 1 (Suprina Depo., 114:23-24).

14.     Plaintiff admits the factual allegations in this paragraph but states that they are not material to Geller's motion for summary judgment or to its claims, generally.

15.     Plaintiff admits the factual allegations in this paragraph but states that they are not material to Geller's motion for summary judgment or to its claims, generally.

16.     Plaintiff disputes the factual allegations in this paragraph and states that the referenced portions of the record do not support the conclusions proposed by Geller.  As an initial matter, Geller's counsel introduced at least <u>eighteen</u> questions at Mr. Suprina's deposition with the phrase "do you have any evidence?"  Counsel asked this question even though Geller had not, on the date of the deposition, complied with any of its Rule 26 automatic disclosure obligations.  Klein Aff., Ex. 1 (Suprina Dep., 274:19-275:10).  There is, furthermore, ample evidence that Maguire engaged in conduct that caused Worcester Baseball to breach its conduct with Plaintiff and enter into a new contract with Dant Clayton.

In late January or early February of 2005, at Worcester Baseball's request, Seating electronically mailed designs in AutoCAD format to Geller.  Affidavit of Scott Ruczaj, dated

October 26, 2005 ("Ruczaj Aff."), ¶ 7.  Seating understood Geller was a consultant to Worcester Baseball on the Fitton Field project.  *See id.*  Seating sent other AutoCAD drawings to Geller via e-mail over the next few weeks.  *See id.*  Every AutoCAD drawing that Seating sent to Geller included the Seating Solutions title block and proprietary information statement.  *See id.*  The statement reads: "Notice: Seating Solutions claims proprietary rights in the information disclosed on this drawing.  It is issued in confidence for engineering information only and may not be used in whole or in part to manufacture anything whether or not shown herein reproduced or disclosed to anyone without direct written permission from Seating Solutions."  *See id.* at ¶ 3.  Seating did not authorize Geller to disclose its drawings to any third parties.  *See id.* at ¶ 8.  Geller nonetheless removed the Seating Solutions title block and sent copies of Plaintiff's plans for seating areas at Fitton Field to a direct competitor, the Dant Clayton Corporation, and to a lighting company that was also working on the project.  *See id.* at ¶¶ 9-11; Hutchison Aff., Ex. 6.  At a meeting in the middle of February, Mr. Maguire admitted that he had "been shopping the drawings around and getting way cheaper prices."  Ruczaj Aff., ¶ 16.

There is conflicting evidence in the record concerning whether Patrick Maguire, Geller Sport's President, expressed opinions regarding Seating Solutions and Mr. Suprina with Worcester Baseball.  Mr. Tye could not recall whether Mr. Maguire had expressed opinions regarding Mr. Suprina personally.  Klein Aff., Ex. 2 (Tye Depo., 49:15-18; 70:9-12).  A day before the meeting at which Plaintiff entered into a contract with Worcester Baseball, Mr. Maguire urged Worcester Baseball to consider an offer from Dant Clayton before "signing on" with Seating Solutions.  Klein Aff., Ex. 1 (Tye Depo., 64:1-19, Ex. 5).

17.    Plaintiff disputes the factual allegations in this paragraph.  These allegations concern the motivations and thought processes of Geller in this case.  Given that Plaintiff has not been permitted to depose Geller or any Geller personnel concerning its motivations in this case, factual conclusions concerning those motivations are premature.  Klein Aff., ¶ 12.  By February 16, 2005, however, Geller knew that Plaintiff and Worcester Baseball were finalizing their contract.  Klein Aff., Ex. 2 (Tye Depo., 151:5-12; Ex. 23).  There is evidence in the record,

furthermore, that could lead a reasonable jury to conclude that Mr. Maguire acted with an improper motive or improper means when he advised Worcester Baseball concerning Plaintiff's proposals. For example:

    a.    Mr. Maguire wrote to Mr. Tye that he should "squeeze [Scott Suprina's] nuts until you see blood." Klein Aff., Ex. 2 (Tye Depo., 68:2-4; Ex. 6).

    b.    Mr. Maguire wrote to Mr. Tye that Plaintiff's price was "ridiculous. There is a word that could go before ridiculous but company policy prohibits its use in email." Klein Aff. Ex. 2 (Tye Depo., 59:23-60:20; Ex. 3)

    d.    Geller sent Seating's designs to Dant Clayton even though they were clearly prohibited from doing so. *See* ¶ 16 *supra*.

    e.    Geller disclosed Seating's pricing to Dant Clayton. Klein Aff., Ex. 2 (Tye Depo. Ex. 5).

    f.    On Thursday, February 17, 2005, Mr. Maguire said that he was "going to forward [Dant Clayton] the plan w[e] developed the other day." Klein Aff. Ex. 2 (Tye Depo., 64:4-9; Ex. 5).

    g.    Mr. Maguire attended, and may have precipitated, a meeting between Worcester Baseball and Dant Clayton two days after Plaintiff and Worcester Baseball finalized the terms of their agreement. Klein Aff. Ex. 2 (Tye Depo., 121:15-122:3; 220:2-14; Ex. 15).

    h.    Mr. Maguire and Mr. Suprina exchanged angry words at a meeting concerning the project, after which Mr. Maguire was visibly upset. At the meeting, which occurred on February 18, 2005, Mr. Maguire said that he had been researching pricing on bleachers and that Plaintiff's prices were ridiculous. Ruczaj Aff., ¶¶ 12-15. Mr. Suprina asked Mr. Maguire if he based his assessment on a net or gross seat count. Ruczaj Aff., ¶ 15; Klein Aff., Ex. 1 (Suprina Dep., 202:4-9). Mr. Maguire said "net" then changed his mind and "gross." Ruczaj Aff., ¶ 15; Klein Aff., Ex. 1 (Suprina Dep., 202:4-9). Mr. Suprina asked if Mr. Maguire had compared the Fitton Field seating system with

high school bleacher pricing and Mr. Maguire said that he had. Ruczaj Aff., ¶ 15; Klein Aff., Ex. 1 (Suprina Dep., 201:23-202:3). Mr. Suprina told Mr. Maguire that high school bleachers are semi-closed 24 inch tread bench seats. Ruczaj Aff., ¶ 15. Seating Solutions' plan would have involved a fully closed welded deck with flip seats, which is entirely different. *See id*. Mr. Maguire appeared to be very upset by this. Ruczaj Aff., ¶ 16; Klein Aff., Ex. 2 (Tye Dep., 75:4-20). His face reddened and it was clear that Mr. Maguire and Mr. Suprina did not like each other. Ruczaj Aff., ¶ 16; Klein Aff., Ex. 2 (Tye Dep., 75:4-20).

18. Plaintiff admits that Sink Combs Dethleff developed a basic plan for the Fitton Field site but denies the remaining factual allegations in this paragraph. Scott Ruczaj worked for a number of days designing the Fitton Field seating system. Ruczaj Aff., ¶ 5. The Fitton Field drawings that Plaintiff prepared are not based upon compilations of drawings prepared by Geller and others. Ruczaj Aff., ¶ 17. Scott Ruczaj did all the drafting, modifications, and revisions on the drawings that Seating Solutions generated. *See id*. He did not base the design on drawings prepared by any third party. *See id*. Geller did not draw any part of the stand. *See id*. Scott Suprina and Mr. Ruczaj decided the exact location and rotation of the seating. *See id*. Geller personnel would look over the drawings and tell Plaintiff what they wanted modified or what ideas they had, and Mr. Ruczaj would go and make any changes. *See id*. Mr. Ruczaj has never seen a Geller version of a plan prepared by Sink Combs Dethleff. *See id*.

19. Plaintiff admits certain of the factual allegations in this paragraph but disputes the assertion that "[t]he layout of Fitton Field required a certain structural design and there were limited ways the seating could be installed." This is incorrect. There are numerous ways this stand could have been constructed and installed. Ruczaj Aff., ¶ 18. The hill at the site could have been leveled for the installation of non-elevated stands. *See id*. The seating system could have employed a traditional front walkway instead of a rear walkway. Plaintiff could have pushed the entire field forward to allow for more seating. *See id*. Plaintiff could have located concession stands and player locker rooms underneath the stand. *See id*. The possibilities, in

short, are endless and limited only by the creativity of the people who do the design work. *See id*.

Plaintiff further states that it closely guards the confidentiality of its design work. The three design professionals at Seating Solutions and Scott Suprina are the only people who have access to AutoCAD designs prepared there. Ruczaj Aff., ¶ 3; Klein Aff., Ex. 1 (Suprina Depo., 255:18-256:3). The design files on the server at Seating Solutions are password-protected. Ruczaj Aff., ¶ 3; Klein Aff., Ex. 1 (Suprina Depo., 256:15-23). Only Mr. Suprina and the designers have passwords that enable them to access these files. Ruczaj Aff., ¶ 3; Klein Aff., Ex. 1 (Suprina Depo., 256:15-23). Seating Solutions keeps a limited number of paper design drawings on file in Mr. Suprina's office, to which access is extremely limited. Klein Aff., Ex. 1 (Suprina Depo., 257:18-258:17).

20.     Plaintiff states that the question of whether their drawings are entitled to copyright protection is a question of law. Plaintiff otherwise admits the factual allegations in this paragraph.

21.     Plaintiff admits the factual allegations in this paragraph.

22.     Plaintiff admits the factual allegations in this paragraph.

23.     Plaintiff disputes the factual allegations in this paragraph. Plaintiff cannot determine the truth or falsity of this allegation without obtaining discovery from Dant Clayton. Plaintiff further states that the factual allegations in this paragraph are immaterial because Geller disclosed Plaintiff's drawing to third parties without written permission of Seating Solutions. Ruczaj Aff. ¶¶ 9-11.

24.     Plaintiff admits certain of the factual allegations in this paragraph but states that they are not material to Geller's motion for summary judgment or to its claims, generally. Plaintiff states that the question of whether it had a confidentiality agreement with Geller amounts to a legal conclusion. Geller had a contractual obligation to Plaintiff to keep its drawings confidential. In exchange for its promise to abide by the terms set forth the confidentiality statement on Plaintiff's drawings, Geller gained access to the drawings. Klein

Aff., Ex. 1 (Suprina Depo., 259:24-260:6; 261:22-262:20).  If Geller had not agreed to the terms set forth on the title block of the drawings, it should have sent the drawings back to Seating Solutions.  Klein Aff., Ex. 1 (Suprina Depo., 263:24-264:4).

25. Plaintiff admits the majority of the factual allegations contained in this paragraph.  Plaintiff disputes the claim that "[f]rom the first meeting with . . . Dant Clayton . . . , Worcester Baseball . . . wanted to work with it."  In mid-February 2005, Worcester Baseball indicated that it did not wish to receive further proposals from Dant Clayton.  Klein Aff., Ex. 2 (Tye Depo., 58-17-22).

RI Inc. d/b/a SEATING SOLUTIONS

By its attorneys

   /s/                      Terry Klein
HENSHON PARKER VYADRO, P.C.
Terry Klein, BBO# 652052
84 State Street, Suite 760
Boston, Massachusetts  02109
Telephone: (617) 367-1800
Facsimile: (617) 507-6454

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by first class mail upon all counsel of record on October 27, 2005.

   /s/                      Terry Klein