UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RI, Inc. d/b/a SEATING SOLUTIONS,<br><br>Plaintiff,<br><br>v.<br><br>GELLER SPORT, INC. and GELLER DEVELLIS, INC.,<br><br>Defendants. | CIVIL ACTION<br>NO. 05-CV-10365-JLT |

### PLAINTIFF'S TRIAL BRIEF

### I. INTRODUCTION

On February 18, 2005, after weeks of negotiations, RI, Inc., d/b/a Seating Solutions ("Plaintiff", "Seating", or "Seating Solutions") entered into an oral agreement with Worcester Baseball, LLC ("Worcester Baseball") to install seating areas at its new minor league baseball stadium in Worcester, Massachusetts. In the meantime, Geller Sport, Inc. and Geller Devellis, Inc. (collectively, "Geller"), Worcester Baseball's consultant on the project, obtained custom design drawings from Seating Solutions. Seating provided the drawings in confidence with the written limitation that Geller could not disclose them to third parties. In manifest disregard of its confidentiality obligations, Geller's lead consultant on the project, Patrick Maguire, sent copies of Seating's custom designs, along with its pricing, to a key competitor, the Dant Clayton Corporation ("Dant Clayton"). Mr. Maguire did not share any of Dant Clayton's impressions, product design information, or pricing with Seating Solutions.

In one instance, Mr. Maguire received a design drawing from Seating Solutions that included a confidentiality stamp and sent the very same drawing out to Dant Clayton *without* the confidentiality stamp thirty minutes later. Mr. Maguire's hostility and ill will motivated him to act as he did; at a meeting with Geller and Worcester Baseball, Mr. Suprina exposed Mr. Maguire's inexperience, which made Mr. Maguire visibly upset and uncomfortable. Geller also

attended and precipitated a sales meeting between Dant Clayton and Worcester Baseball that took place two days after the team had given Plaintiff the seating contract.

Seating has four claims against Geller in this action:[1] (i) tortious interference with advantageous business relations; (ii) trade secret misappropriation; (iii) breach of confidentiality agreement; and (iv) violation of Mass. Gen. Law ch. 93A, §§ 2, 11.  Since Worcester Baseball ultimately reneged and gave the seating contract to Dant Clayton, Seating Solutions expects the evidence to show that Geller's wrongful conduct caused it to suffer hundreds of thousands of dollars in damages.

## II.    EVIDENCE OF GELLER'S WRONGFUL CONDUCT

Seating Solutions is in the seating system design and construction industry and specializes in the sale, rental, and timely installation of custom-designed spectator seating at athletic and recreational facilities.  Worcester Baseball is the owner and operator of the Worcester Tornadoes, a professional baseball franchise that plays in Worcester as part of the Canadian American Association of Professional Baseball.  The Tornadoes began playing in Worcester in the Spring of 2005, prior to which Worcester Baseball was attempting to find a place for its team's home games.  Geller provides recreation and athletic facility design consultant services.  Geller was Worcester Baseball's consultant in the effort to find, and ultimately design and build, a home stadium.  Patrick Maguire was Worcester Baseball's primary contact at Geller.

Seating Solutions met with Worcester Baseball on several occasions during the fall and early winter of 2004.  Mr. Suprina visited at least three sites in the Worcester area where Worcester Baseball was planning to locate the baseball team.  Seating prepared custom concept drawings of stadiums at each of the sites that it visited. Beginning in December of 2005, Seating Solutions and Worcester Baseball began discussing the possibility that Seating Solutions would

---

[1] Seating and Worcester Baseball agreed to a settlement on July 31, 2006.  Seating has also agreed to voluntarily dismiss its conversion claim (Count IV) against Geller.

- 2 -

perform an extensive renovation of Fitton Field, which is located on the campus of the College of the Holy Cross ("Holy Cross"), so that Worcester Baseball could base its team there. Seating Solutions did exhaustive custom design work on the design of the seating areas at Fitton Field.

At the end of January 2005, Worcester Baseball reached a tentative agreement with Holy Cross that would permit the team to play at Fitton Field beginning that same Spring. Shortly after announcing the agreement with Holy Cross, Seating Solutions and Worcester Baseball met at Mr. Tye's office in Newton. Because it specializes in jobs with tight timeframes, Seating Solutions expressed confidence that it could complete the renovation by the middle of May – an extremely rapid turnaround. Earlier that same day at a similar meeting with Dant Clayton, Dant representative Matt Dougherty said that completing the project by mid-May was not realistic.

With Dant Clayton seemingly out of the picture, Seating Solutions got to work. Scott Ruczaj, Seating's head draftsman, did all of the drafting, modifications, and revisions on the drawings that Seating Solutions generated. He did not base the design on drawings prepared by any third party and Geller did not draw any part of the stand. Scott Suprina and Mr. Ruczaj decided the exact location and orientation of the seating. Geller personnel reviewed the drawings and told Plaintiff what they wanted modified, and Mr. Ruczaj made a few of these changes. The designs required creativity. There are numerous ways the Fitton Field stand could have been built. For example, Worcester Baseball could have leveled the hill at the site and installed non-elevated stands, employed a traditional front walkway instead of a rear walkway, pushed the entire field forward to allow for more seating, or located concession stands and player locker rooms underneath the stand. The possibilities, in short, were endless and limited only by the creativity of the people who do the design work.

Seating Solutions closely guards the confidentiality of its designs. The three design professionals at Seating Solutions and Scott Suprina are the only people who have unrestricted access to AutoCAD designs prepared there. The design files reside on their own server at Seating Solutions. Access to that server is password-protected. Only Mr. Suprina and the designers have passwords that enable them to access these files. Seating Solutions keeps a

limited number of paper design drawings on file in Mr. Suprina's office, to which access is limited.

In late January or early February of 2005, at Worcester Baseball's request, Seating electronically mailed custom designs in AutoCAD format to Geller Sport. Seating understood Geller was a consultant to Worcester Baseball on the Fitton Field project. Seating sent more AutoCAD drawings to Geller via e-mail over the next few weeks. Every AutoCAD drawing that Seating sent to Geller included the Seating Solutions title block and proprietary information statement. The statement reads:

> Notice: Seating Solutions claims proprietary rights in the information disclosedon [sic] this drawing. It is issued in confidence for engineering information only and may not be used in whole or in part to manufacture anything whether or not shown herein reproduced or disclosed to anyone without direct written permission from Seating Solutions.

Seating never authorized Geller to disclose its drawings to any third parties. Geller nonetheless removed the title block and sent copies of Plaintiff's plans to Dant Clayton and a lighting supplier.

At a meeting in the middle of February, Mr. Maguire admitted that he had been "shopping" the drawings. Mr. Suprina expressed his extreme displeasure with the disclosure of the drawings and told Mr. Maguire and Mr. Tye that he was not a "free consultant." Mr. Maguire then falsely assured Mr. Suprina that Dant Clayton had dropped out of the picture because it could not perform within an acceptable time frame. Mr. Maguire and Mr. Suprina also discussed Mr. Maguire's belief that Seating's proposed price was too high. Mr. Suprina asked Mr. Maguire if he based his assessment on net or gross seat count. Mr. Maguire's answer was ambiguous and indecisive, but he did confirm that he had compared the Fitton Field seating system with high school bleacher pricing. Mr. Suprina told Mr. Maguire that high school bleachers are semi-closed 24 inch tread bench seats. Seating Solutions' plan involved a fully closed welded deck with flip seats, which is quite different. Mr. Maguire was clearly upset. His face reddened and it was clear to others at the meeting that Mr. Maguire was uncomfortable.

By this point – February 15, 2005 – Geller knew that Seating Solutions and Worcester Baseball were in the process of finalizing their contract. The record is nonetheless clear that two days later, on February 17, 2006:

- Mr. Maguire disclosed Seating's pricing to Matt Dougherty at Dant Clayton.

- Mr. Maguire brought the possibility of another meeting with Dant Clayton to Mr. Tye's attention.

- Mr. Maguire told Mr. Tye that he was "going to forward [Dant Clayton] the plan w[e] developed the other day."

- Maguire indeed did forward a copy of Seating's detailed custom designs to Dant Clayton with the Seating title block removed, approximately a half an hour after receiving those same design drawings *with* the Seating title block.

- After Mr. Tye informed him that he and Mr. Suprina were close to finalizing the deal, Mr. Maguire wrote to Mr. Tye that he should "squeeze his nuts until you see blood."

These communications took place the day before a critical February 18, 2005 meeting between Seating Solutions and the baseball team. At that meeting, Seating Solutions and Worcester Baseball entered into an oral agreement. The parties settled upon a contract price of $1,519,880.90. Mr. Suprina was so confident that Seating Solutions could deliver the stadium in the required timeframe that he agreed to credit the baseball team $50,000.00 for each week after May 15, 2005 that Seating's work was not substantially complete.

Two days later, however, on February 20, 2005, Worcester Baseball met with representatives of Dant Clayton. During the meeting, Dant inaccurately related numerous shortcomings of Seating's custom designs – designs that it had obtained from Geller. It is indisputable that Seating Solutions was at the very least in contention for the order when Dant came to meet with the baseball team. There is no evidence, though, that Geller attempted to give Seating a chance to respond after Dant reentered the picture and incorrectly critiqued its designs. Following the February 20th meeting, Worcester Baseball and Dant Clayton entered into a contract. Worcester Baseball terminated its relationship with Seating Solutions. Seating Solutions will present evidence that this material change of circumstances could not have

happened without Geller's misappropriation of its confidential information and its improper interference.  This case is largely about what enabled Dant Clayton to reach the sudden realization that it could finish the baseball stadium by the middle of May after repeatedly stating that it could not.  What made this project viable for Dant when it had previously walked away?

Geller's conduct caused Seating to suffer significant harm.  Scott Suprina's past experience in the industry and his analyses of the Fitton Field Project led him to anticipate that Seating's profit on this job would be at least $591,414.90.  The price that Worcester Baseball agreed to pay was $1,519,880.90.  Seating Solutions' cost of $928,466.00 breaks down as follows:

| Item | Cost |
| --- | --- |
| Seating materials (including bleacher and VIP flip-up chairs) from Outdoor Aluminum | $673,636.00 |
| Press Box | $59,230.00 |
| 2 dugouts (with cost of interior benches included) | $40,000.00 |
| Plastic lumber – includes a 3-4' high field wall and earth containment barrier at front of stand between dugouts | $20,000.00 |
| Installation budget -- $25.00 per seat | $95,600.00 |
| Dress up railing at back of crosswalk and stand sides, chain link rail on stairs | $40,000.00 |
| **Total costs** | **$928,466.00** |

*See id.*

This cost figure is conservative.  Seating Solutions previously obtained custom dugouts for a stadium in Lynn, Massachusetts for $26,184.00 and shipping costs of $1,380.00.  The installation costs would also most likely be less than $25.00 per seat. On three recent jobs from the same time period, Seating Solutions' per-seat installation cost was $17.34, $18.30, and $22.96.  It is rare to have unanticipated material costs.  It is thus unlikely that Seating Solutions and Outdoor Aluminum would experience a higher material cost than $673,636.00.

### III.  PROPOSED JURY INSTRUCTIONS

Seating's proposed jury instructions are filed herewith.[2]

### IV.  PROPOSED SPECIAL VERDICT FORM

A proposed special verdict form is filed herewith.

RI Inc. d/b/a SEATING SOLUTIONS

By its attorneys

   /s/                        Terry Klein
HENSHON PARKER VYADRO, P.C.
Terry Klein, BBO# 652052
84 State Street, Suite 760
Boston, Massachusetts  02109
Telephone: (617) 367-1800
Facsimile: (617) 507-6454

Date:  August 4, 2006

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on or before August 4, 2006.

   /s/                        Terry Klein

---

[2] For the sake of convenience, Seating Solutions will deliver an electronic copy of the instructions and the special verdict form on a compact disc.