UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| RI, Inc. d/b/a SEATING SOLUTIONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 05-CV-10365-JLT |
| GELLER SPORT, INC. and GELLER DEVELLIS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

                    Respectfully submitted,

                    RI Inc. d/b/a SEATING SOLUTIONS

                    By its attorneys

                      /s/                  Terry Klein
                    HENSHON PARKER VYADRO, P.C.
                    Terry Klein, BBO# 652052
                    84 State Street, Suite 760
                    Boston, Massachusetts  02109
                    Telephone: (617) 367-1800
                    Facsimile: (617) 507-6454

Date:  August 4, 2006

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on or before August 4, 2006.

                      /s/                  Terry Klein

**INSTRUCTION NO. 1**

**Tortious Interference with Advantageous Business Relationship**

**The Basics of the Claim**

Seating Solutions is claiming that the Geller defendants tortiously interfered with its business relationship with the baseball team. To succeed on this claim, Seating Solutions must establish (i) the existence of a prospective business relationship; (ii) the defendant's knowledge of the business relationship; (iii) the defendant's intentional interference with the relationship for an improper purpose or by improper means; and (iv) damages caused by the interference.[1]

---

[1] *See Pure Distribs., Inc. v. Baker*, 285 F.3d 150, 157 (1st Cir. 2002) (stating that elements of tortious interference claim are "(1) the existence of a contract or a business relationship which contemplated economic benefit; (2) the defendant's knowledge of the contract or business relationship; (3) the defendant's intentional interference with the contract or business relationship for an improper purpose or by improper means; and (4) damages") (internal punctuation marks omitted); *Holmes Prods. Corp. v. Dana Lighting, Inc.*, 958 F. Supp. 27, 32 (D. Mass. 1997) (same); *Draghetti v. Chmielewski*, 416 Mass. 808, 816, 626 N.E.2d 862, 869 (1994) (same).

**INSTRUCTION NO. 2**

**Tortious Interference -- Defining the Prospective Business Relationship**

Seating Solutions does not have to prove that it had a binding contract with the baseball team. All it has to prove is that it had what is called a prospective or advantageous business relationship. What that means is that Seating Solutions must convince you that it would probably have a business relationship with the baseball team, and that it reasonably expected the relationship to reap a financial benefit.[2]

---

[2] *Fafard Real Estate & Dev. Corp. v. Metro-Boston Broad., Inc.*, 345 F. Supp. 2d 147, 154 (D. Mass. 2004) ("A probable future business relationship from which there is a reasonable expectancy of financial benefit is . . . enough."); *Owen v. Williams*, 322 Mass. 356, 361-62, 77 N.E.2d 318, 322 (1948) ("[I]n order to maintain the action it was not necessary that the plaintiff prove that she had a binding contract . . . . It is well settled that an existing or even a probable future business relationship from which there is a reasonable expectancy of financial benefit is enough."); *Powers v. Leno*, 24 Mass. App. Ct. 381, 385, 509 N.E.2d 46, 49 (1987) ("The plaintiffs did not have to prove a binding contract. A probable future business relationship from which there is a reasonable expectancy of financial benefit is enough.") (internal quotation marks omitted).

## **INSTRUCTION NO. 3**

3.      **Tortious Interference -- Knowledge of the Relationship**

The evidence clearly shows that Geller knew Seating Solutions was working toward a contract with Seating Solutions, so this element of the claim is established.

**INSTRUCTION NO. 4**

**Tortious Interference -- Improper as to Motive or Means**

This is a big issue in this claim. Did the Geller defendants interfere with the business relationship? And was that interference improper as to motive or means?[3] Here are some of the factors that you can consider in determining whether Geller acted with an improper motive or improper means:

- The nature of the Geller's conduct;
- Geller's motive;
- The interests of Seating Solutions;
- The interests sought to be advanced by Geller;
- The social interests in protecting the freedom of action of Geller and the contractual interests of Seating Solutions;
- The proximity or remoteness of Geller's conduct to the interference; and
- The general relations between the parties.[4]

You can also consider whether Geller did something unlawful. For example, did it violate the law somehow in its dealings with Seating Solutions? Did it breach a contract that it had with Seating Solutions? Either one of those things would constitute improper means.[5]

---

[3] *Kurker v. Hill*, 44 Mass. App. Ct. 184, 191, 689 N.E.2d 833, 838 (1998) ("The standard . . . is interference accompanied by improper motive *or* improper means; the plaintiff need not prove both.").

[4] *Dowd v. Iantosca*, 27 Mass. App. Ct. 325, 334, 538 N.E.2d 33, 38 (1989), *rev. denied*, 405 Mass. 1202, 542 N.E.2d 48 (1989) (listing the factors).

[5] *Kurker*, 44 Mass. App. Ct. at 191, 689 N.E.2d at 838 ("For purposes of this cause of action, improper means may consist of a violation of a statute or common law precept.").

**INSTRUCTION NO. 5**

**Tortious Interference -- Malice**

      As you consider whether Geller acted with an improper motive or via improper means, please note that Seating Solutions does not have to prove that Geller or any of its employees acted with malice.[6] That is not an element of this claim.

---

[6] *Lemire v. Silva*, 104 F. Supp. 2d. 80, 95 (D. Mass. 2000) ("Malicious interference is not required in a claim for interference with an advantageous relationship; improper interference is sufficient."); *Addamax Corp. v. Open Software Foundation, Inc*., 888 F. Supp. 274, 286 (D. Mass. 1995) ("[P]laintiff need not establish that the defendant's actions were motivated by malice toward the plaintiff.") (Tauro, J.); *Draghetti*, 416 Mass. at 818, 626 N.E.2d at 870 n.14 ("Malice is no longer an element of either tort; it has been replaced by the concept of improper motive or means."); *Kurker v. Hill*, 44 Mass. App. Ct. 184, 191, 689 N.E.2d 833, 838 (1998) ("The standard . . . is interference accompanied by improper motive *or* improper means; the plaintiff need not prove both.").

**INSTRUCTION NO. 6**

**Misappropriation of Trade Secrets**

**The Basics of the Claim**

A claim for trade secret misappropriation has three elements. Seating Solutions has to prove that (i) the information in question is a trade secret; (ii) it took reasonable steps to preserve the secrecy of the information; (iii) Geller breached a confidential relationship and disclosed or used the trade secret; and (iv) the misappropriation caused damages to Seating Solutions.[7]

---

[7] *See DB Riley, Inc. v. AB. Eng'g Corp.*, 977 F. Supp. 84, 89 (D. Mass. 1997) (reciting elements); Mass. Gen. Law ch. 93, § 42 ("Whoever embezzles, steals or unlawfully takes, carries away, conceals or copies . . . from any person or corporation, with intent to convert to his own use, any trade secret, regardless of value, shall be liable in tort to such person or corporation for all damages resulting therefrom.").

**INSTRUCTION NO. 7**

**Misappropriation -- The Existence of a Trade Secret**

The first thing you need to determine is whether Seating Solutions' drawings were trade secrets. Drawings like these do qualify for trade secret protection.[8] But you should also consider the following factors:

- the extent to which what was in these drawings was known outside of Seating Solutions before Geller disclosed them to Dant Clayton;
- the extent to which what was in these drawings was known by employees and others involved in Seating Solutions' business;
- the extent of measures taken by Seating Solutions to guard the secrecy of the drawings;
- the value of the drawings to the Seating Solutions and to its competitors;
- the amount of effort or money expended by Seating Solutions in developing the drawings; and
- the ease or difficulty with which the drawings could be properly acquired or duplicated by others.[9]

Geller claims that these particular drawings cannot be trade secrets of Seating Solutions. Geller claims that they had a significant role in developing the seating design depicted on the drawing, but Seating Solutions denies that contention.

---

[8] Architectural and design drawings qualify for trade secret protection. *See DB Riley, Inc. v. AB. Eng'g Corp.*, 977 F. Supp. 84, 89 (D. Mass. 1997) (holding that drawings of boiler parts were "considered to be a trade secret"); *USM Corp. v. Marson Fastener Corp.*, 379 Mass. 90, 100, 393 N.E.2d 895, 901 (1979) ("[D]etailed manufacturing drawings are prima facie secrets.") (internal punctuation marks omitted). *See also Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991) ("Architectural plans . . . and design drawings may be trade secrets."), *aff'd*, 505 U.S. 763 (1992); *Ecolaire, Inc. v. Crissman*, 542 F. Supp. 196, 206 (E.D. Pa. 1982) ("Absent access to such drawings, competitors must resort to a costly, time consuming process of reverse engineering . . . .").

[9] *Jet Spray Cooler, Inc.*, 361 Mass. at 840, 282 N.E.2d at 925.

**INSTRUCTION NO. 8**

**Misappropriation -- Reasonable Measures to Protect the Trade Secret**

The law requires that one who possesses a trade secret must take reasonable steps to preserve its secrecy. The law requires only reasonable precautions, not heroic measures.[10] In determining whether Seating Solutions has taken reasonable precautions to protect the secrecy of its drawings, you should think about the following four factors:

- the existence or absence of an express agreement between Seating Solutions and Geller restricting disclosure;

- the nature and extent of security precautions taken by Seating Solutions to prevent acquisition of the information by unauthorized third parties;

- the circumstances under which the information was disclosed to Geller to the extent that these circumstances give rise to a reasonable inference that further disclosure, without the consent of Seating Solutions, was prohibited;

- the degree to which the information has been placed in the public domain or rendered readily ascertainable by third parties through patents or unrestricted product marketing.[11]

---

[10] *Picker Int'l Corp. v. Imaging Equip. Svcs., Inc.*, 931 F. Supp. 18, 23 (D. Mass. 1995) ("It is not necessary . . . that an impenetrable fortress be erected to retain legal protection for a trade secret."); *See also USM Corp.*, 379 Mass. at 101, 393 N.E.2d at 902 ("We do not require the possessor of a trade secret to take heroic measures to preserve its secrecy.").

[11] *See Harvard Apparatus, Inc. v. Cowen*, 130 F.Supp.2d 161, 176 (D. Mass. 2001) (reciting factors); *USM Corp. v. Marson Fastener Corp.*, 379 Mass. at 98 (same).

**INSTRUCTION NO. 9**

**Misappropriation -- Disclosure**

The evidence is clear that Geller disclosed the drawings and pricing to Dant Clayton. Thus, if you find that the drawings were trade secrets and that Seating Solutions took reasonable measures in protecting those trade secrets, you should move on to determine what damages resulted from the disclosure.

## INSTRUCTION NO. 10

**Breach of Confidentiality Agreement**

**The Basics of the Claim**

This is a breach of contract claim. For Seating Solutions to prevail on this claim it has to convince you of three things:

- That it had a confidentiality agreement with Geller.
- That the baseball team breached the confidentiality agreement; and
- That Seating Solutions suffered damages as a result of Geller's breach.[12]

---

[12] *See Doyle v. Hasbro*, 103 F.3d 186, 194 (1st Cir. 1996) ("In order to sustain [a] breach of contract claim, plaintiffs must plead . . . that [they] were damaged."). *Realty Developing Co. v. Wakefield Ready-Mixed Concrete Co.*, 327 Mass. 535, 537, 100 N.E.2d 28, 30 (1951) ("[B]reach of contract is a failure to perform for which legal excuse is lacking.").

**INSTRUCTION NO. 11**

**Breach of Confidentiality Agreement – Existence of Agreement**

A contract is a promise, or set of promises, between two or more persons to do or not do a certain thing. A formal, final written document is not a requirement for the establishment of a contract. What matters is the intent of the parties to be bound.[13] Here, Seating Solutions is claiming that it would not have provided the drawings to Geller if Geller had stated that it was not willing to maintain their confidentiality. Geller is denying that it viewed the notice as creating a contractual obligation.

---

[13] *See Chedd-Angier Prod. Co., Inc. v. Omni Publ'ns Int'l, Ltd.,* 756 F.2d 930, 935 (1st Cir. 1985) ("[U]nder Massachusetts law even where a writing was contemplated by the parties, if sufficient evidence exists to show that an oral contract has been entered into, the parties' intention to memorialize the contract in writing does not defeat the existence of an oral contract."); *White Spot Constr. Corp. v. Jet Spray Cooler, Inc.*, 344 Mass. 632, 634, 183 N.E.2d 719, 721 (1962) ("The jury was warranted in finding that the parties entered into a bilateral contract at the time [they] shook hands . . . ."); *Hunneman Real Estate Corp. v. Norwood Realty, Inc.*, 54 Mass. App. Ct. 416, 423, 765 N.E.2d 800, 806 (2002) ("Notwithstanding the importance of protecting negotiating parties from involuntary judicially imposed contract[s], it is equally important that courts enforce and preserve agreements that were intended as binding, despite a need for further documentation or further negotiation."), *rev. denied*, 437 Mass. 1105, 772 N.E.2d 590 (2002); *ESO, Inc. v. Kasparian*, 32 Mass. App. Ct. 731, 733-34, 594 N.E.2d 557, 559 (1992) ("It is well-settled that an agreement need not be in writing to be enforceable."); *Novel Iron Works, Inc. v. Wexler Constr. Co., Inc.*, 26 Mass. App. Ct. 401, 408, 528 N.E.2d 142, 146 (1988) ("If . . . the parties orally agree to the essential terms of the transaction, it may be inferred that they intended to bind themselves at that time . . . ."), *rev. denied*, 403 Mass. 1104, 530 N.E.2d 797 (1988).

**INSTRUCTION NO. 12**

**Breach of Confidentiality Agreement -- Consideration**

The other thing that Geller says is that it received nothing in exchange for a supposed promise to keep the drawings confidential. Lawyers refer to this as "consideration," but it's really just based on the idea of a bargain. In order for Seating Solutions and Geller to have had a contract, Seating Solutions has to have provided something to Geller, and Geller needs to have provided something to Seating Solutions.[14]  It's important to keep in mind, though, that the amount of consideration necessary to establish a valid contract is minimal.[15]

---

[14] *Quinn v. State Ethics Comm'n*, 401 Mass. 210, 216, 516 N.E.2d 124, 127 (1987) ("Consideration in the common law sense [is] a benefit to the promisor . . . ."); Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth., 357 Mass. 40, 42-43, 255 N.E.2d 793, 795 (Mass. 1970) ("Legal detriment means giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing. Benefit correspondingly must mean the receiving as the exchange for his promise of some performance or forbearance which the promisor was not previously entitled to receive.").

[15] *See Barnett v. Rosen*, 235 Mass. 244, 249, 126 N.E. 386, 388 (1920) ("It is enough that the consideration is valuable; it need not be adequate."); *V. & F. W. Filoon Co. v. Whittaker Corp.*, 12 Mass. App. Ct. 932, 933, 425 N.E.2d 399, 400 (1981) (same). *See also Graphic Arts Finishers, Inc. v. Boston Redevelopment Auth.*, 357 Mass. 40, 43, 255 N.E.2d 793, 796 (1970) (same).

**<u>INSTRUCTION NO. 13</u>**

**Breach of Confidentiality Agreement -- Breach**

  The evidence is clear that if you find that there was a confidentiality agreement in place, that you must find that Geller breached that confidentiality agreement.

**INSTRUCTION NO. 14**

**General Damage Instruction**

If you find that Geller is liable to Seating Solutions, then you will have to determine the amount of Seating Solutions' damages. The basic principle here is that Seating Solutions should be put in as good a position as if Geller had not tortiously interfered, not misappropriated trade secrets, or fully performed its obligations under the contract.[16]

---

[16] *Boylston Housing Corp. v. O'Toole*, 321 Mass. 538, 562 (1947) ("The rule of damages in an action for breach of contract is that the plaintiff is entitled in general to damages sufficient in amount to compensate him for the loss actually sustained by him, and to put him in as good position financially as he would have been in if there had been no breach and he had completed the contract.") (internal quotation marks omitted); *Kobayashi v. Orion Ventures, Inc.*, 42 Mass. App. Ct. 492, 499("[T]he measure of damages is the amount which places the injured party in as good a position as if the contract had been performed."), *rev. denied*, 425 Mass. 1102 (1997); *American Mechanical Corp. v. Union Mach. Co. of Lynn, Inc.*, 21 Mass. App. Ct. 97, 101 (1985) ("Consistent with general principles of contract law, the aim in measuring damages in the event of a breach is to place the injured party in as good a position as he would have been in had the contract been performed.").

**INSTRUCTION NO. 15**

**Damages – Tortious Interference**

If you determine that Geller tortiously interfered with Seating Solutions' advantageous business relationship with the baseball team, you should award Seating Solutions damages in an amount equaling what you believe Seating Solutions requires to be put in as good a position as if Geller had not interfered.[17]

---

[17] *Allied Int'l, Inc. v. International Longshoremen's Ass'n, AFL-CIO*, 640 F.2d 1368, 1384 (1981) ("Damages [for tortious interference] may include lost profits as well as consequential losses."); *National Merchandising Corp. v. Leyden*, 370 Mass. 425, 430, 348 N.E.2d 771, 774 (1976) ("For interference with contractual relations, cases in this jurisdiction have awarded to plaintiffs an approximation of their lost profits, evidently on a tort basis."); *Powers v. Leno*, 24 Mass. App. Ct. 381, 385, 509 N.E.2d 46, 49 (1987) (describing damages for intentional interference as "the plaintiff's loss of advantage directly resulting from the defendant's conduct").

**INSTRUCTION NO. 16**

**Damages -- Misappropriation**

If you determine that Geller misappropriated Seating Solutions' trade secrets, you should award Seating Solutions damages in an amount equaling what you believe Seating Solutions requires to be put in as good a position as if it had not misappropriated those secrets.[18]

---

[18] *Curtiss-Wright Corp. v. Edel-Brown Tool & Die Co., Inc.*, 381 Mass. 1, 11-12, 407 N.E.2d 319, 326-27 (1980) ("This court has recognized three acceptable methods of measuring damages in cases involving business torts such as the misappropriation of trade secrets: the defendant's profits realized from his tortious conduct, the plaintiff's lost profits, or a reasonable royalty.").

**INSTRUCTION NO. 17**

**Damages – Breach of Confidentiality Agreement**

If you determine that Geller breached a contract with Seating Solutions, you should award as damages sum of money that will fully and fairly compensate Seating Solutions for what it would have received in income, less its expense, if the contract had not been breached.[19]

---

[19] *Boylston Housing Corp. v. O'Toole*, 321 Mass. 538, 562 (1947) ("The rule of damages in an action for breach of contract is that the plaintiff is entitled in general to damages sufficient in amount to compensate him for the loss actually sustained by him, and to put him in as good position financially as he would have been in if there had been no breach and he had completed the contract.") (internal quotation marks omitted); *Kobayashi v. Orion Ventures, Inc.*, 42 Mass.App.Ct. 492, 499("[T]he measure of damages is the amount which places the injured party in as good a position as if the contract had been performed."), *rev. denied*, 425 Mass. 1102 (1997); *American Mechanical Corp. v. Union Mach. Co. of Lynn, Inc.*, 21 Mass. App. Ct. 97, 101 (1985) ("Consistent with general principles of contract law, the aim in measuring damages in the event of a breach is to place the injured party in as good a position as he would have been in had the contract been performed.").

**INSTRUCTION NO. 18**

**Damages – No Requirement of Mathematical Certainty**

Mathematical certainty is not required, so long as there is some rational basis for the damages that you award to Seating Solutions.[20]

---

[20] *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.*, 439 Mass. 387, 413 (2003) ("Under our cases, an element of uncertainty is permitted in calculating damages and an award of damages can stand on less than substantial evidence."); *Ricky Smith Pontiac, Inc. v. Subaru, Inc.*, 14 Mass. App. Ct. 396, 426 (1982) (same).

**INSTRUCTION NO. 19**

**Damages – Lost Profits**

If you find for Seating Solutions on any of its claims, you may award it damages for the profits it has lost, if any, by reason of the defendants' conduct.[21] You do not have to determine Seating Solutions' lost profits with mathematical precision. An element of uncertainty is permitted in calculating damages.[22] If you award Seating Solutions its lost profit damages, the law requires that your award have a rational basis in light of the evidence that has been presented to you at trial.[23]

---

[21] *Lowrie v. Castle,* 225 Mass. 37, 51, 113 N.E.2d 206, 210 (1916) ("Prospective profits may be recovered in an appropriate action when the loss of them appears to have been the direct result of the wrong complained of and when they are capable of proof to a reasonable degree of certainty.").

[22] *Thermo Electron Corp. v. Schiavone Constr. Co*., 958 F.2d 1158, 1166 (1st Cir. 1992) ("Damages for lost profits need not be proved with mathematical certainty, provided an award has a rational basis in the evidence."); *Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co*., 439 Mass. 387, 413, 788 N.E.2d 522, 543 (2003) ("The plaintiff [is] not required to prove its lost profits with mathematical precision. Under our cases, an element of uncertainty is permitted in calculating damages and an award of damages can stand on less than substantial evidence. This is particularly the case in business torts, where the critical focus is on the wrongfulness of the defendant's conduct."); *Ricky Smith Pontiac, Inc. v. Subaru of New England, Inc*., 14 Mass. App. Ct. 396, 426, 440 N.E.2d 29, 48 (1982) ("The plaintiff was not required to prove its lost profits with mathematical precision. Under our cases, an element of uncertainty is permitted in calculating damages and an award of damages can stand on less than substantial evidence. This is particularly the case in business torts, where the critical focus is on the wrongfulness of the defendant's conduct."), *rev. denied*, 387 Mass. 1103, 441 N.E.2d 260 (1982).

[23] *See id.*